## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **Kangdi Electric Vehicle (Hainan) Co., Ltd.,** *et al.*, |
|              **Plaintiffs,** |
| |
| **The American Personal Transportation Vehicle Manufacturers Coalition,** |
|            **Consolidated Plaintiff,** |
| |
|               **v.** |
| |
| **UNITED STATES,** |
|            **Defendant,** |
| |
|    **and** |
| |
| **The American Personal Transportation Vehicle Manufacturers Coalition and Xiamen Dalle New Energy Automobile Co., Ltd., Inc.,** |
|            **Defendant-Intervenors.** |

**Consol. Ct. No. 1:25-cv-00202-JAR**

### PLAINTIFFS KANGDI ELECTRIC VEHICLE (HAINAN) CO., LTD., AND SC AUTOSPORTS, LLC'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiffs Kangdi Electric Vehicle (Hainan) Co., Ltd., and SC Autosports, LLC, dba Kandi America ("Kangdi Plaintiffs"), by and through their undersigned counsel, respectfully move for judgment on the agency record with respect to the United States Department of Commerce's ("Commerce") final affirmative critical circumstances determination in the (amended) final

1

antidumping duty determination on Certain Low Speed Personal Transportation Vehicles from the People's Republic of China, 90 Fed. Reg. 38759 (August 12, 2025). Commerce's reasoning for its final determination was published in the Issues and Decision Memorandum on June 16, 2025. *See* Memorandum from Scot Fullerton to Abdelali Elouaradia, *Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China*, dated June 16, 2025 (PR 692).

Kangdi Plaintiffs respectfully move, for the reasons set forth in the accompanying memorandum, that this Court find that Commerce's findings, conclusions, and decisions with respect to the critical circumstances are not supported by substantial evidence or otherwise contrary to law. Kangdi Plaintiffs further move this Court to remand this determination to Commerce for disposition consistent with the Court's final opinion.

Dated: April 13, 2026

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
/s/ Johnathan Foege
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670

*Counsel for Kangdi Electric Vehicle (Hainan) Co., Ltd. and SC Autosports, LLC, dba Kandi America*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| Kangdi Electric Vehicle (Hainan) Co., Ltd., *et al.*,<br>          Plaintiffs,<br><br>The American Personal Transportation Vehicle Manufacturers Coalition,<br>          Consolidated Plaintiff,<br><br>v.<br><br>UNITED STATES,<br>          Defendant,<br><br>     and<br><br>The American Personal Transportation Vehicle Manufacturers Coalition and Xiamen Dalle New Energy Automobile Co., Ltd., Inc.,<br>          Defendant-Intervenors. |

Consol. Ct. No.
1:25-cv-00202-JAR

**[PROPOSED] ORDER**

Upon consideration of Kangdi Electric Vehicle (Hainan) Co., Ltd., and SC Autosports, LLC, dba Kandi America's (collectively "Kangdi Plaintiffs") Rule 56.2 Motion for Judgment on the Agency Record and the accompanying memorandum, and upon all other papers filed and proceedings had herein, it is hereby

**ORDERED** that Kangdi Plaintiffs' motion for judgment on the agency record is granted; and it is further

**ORDERED** that this action is remanded to the U.S. Department of Commerce for proceedings consistent with this Court's opinion.

Dated: _____, 2026          _____

New York, New York                              Hon. Jane Restani, Senior Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

<table>
<tr>
<td>

**Kangdi Electric Vehicle (Hainan) Co., Ltd.,** *et al.*,
       **Plaintiffs,**

**The American Personal Transportation Vehicle Manufacturers Coalition,**
       **Consolidated Plaintiff,**

       **v.**

**UNITED STATES,**
       **Defendant,**

   **and**

**The American Personal Transportation Vehicle Manufacturers Coalition and Xiamen Dalle New Energy Automobile Co., Ltd., Inc.,**
       **Defendant-Intervenors.**

</td>
<td>

**Consol. Ct. No. 1:25-cv-00202-JAR**

</td>
</tr>
</table>

**KANGDI PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

**LIANG + MOONEY, PLLC**
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670
*Counsel for Kangdi Electric Vehicle (Hainan) America*

**Dated: April 13, 2026**

**Court No. 25-00202**

TABLE OF CONTENTS

**I. Introduction**..................................................................................................... 1

**II. Statement Pursuant to Rule 56.2(c)**...................................................... 2

    A. Administrative Determination Under Review.................................................. 2

    B. Issues Presented................................................................................................. 3

        1. Does Substantial Record Evidence Support Commerce's Finding That There Was A Massive Increase In Imports Over A Relatively Short Period?... 3

        2. Was Commerce's Use of Import Data for HTSUS 8703.10.5030 to Determine Whether Imports Were "Massive" Reasonable and Supported By Substantial Evidence?.................................................................................... 5

    C. Request for Court Order and Relief Sought.................................................... 5

**III. Procedural Background And Determination Under Review**..................... 5

**IV. Standard of Review**................................................................................. 7

**V. Arguments**................................................................................................. 8

    A. Commerce Ignored Data on the Record and Failed to Conduct a Seasonality Analysis........................................................................................................... 10

    B. Commerce's Reliance on HTSUS Subheading 8703.10.5030 to Determine Whether Imports Were "Massive" Was Unreasonable and Unsupported by Substantial Evidence……………………………………………………………12

**VI. Conclusion**............................................................................................ 16

**Court No. 25-00202**

## TABLE OF AUTHORITIES

**Cases**

*Atl. Sugar, Ltd. v. United States,*
744 F.2d 1556, 1562 (Fed.Cir. 1984)...............................................................................7

*DuPont Teijin Films USA v. United States,*
407 F.3d 1211 (Fed. Cir. 2005) ........................................................................................ 7

*Huaiyin Foreign Trade Corp. (30) v. United States,*
322 F.3d 1369, 1374 (Fed. Cir. 2003)................................................................................7

*Jiaxing Bro. Fastener Co. v. United States,*
822 F.3d 1289, 1297 (Fed. Cir. 2016)................................................................................8

*Longkou Haimeng Mach. Co. v. United States,*
32 C.I.T. 1142, 1161-2, 1164 (Ct. Int'l Trade 2008)................................................13, 16

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ......................................................................................................... 8

*Mid Continent Nail Corp. v. United States,*
846 F.3d 1364 (Fed. Cir. 2017) ....................................................................................... 8

*Peer Bearing Co.-Changshan v. United States,*
36 C.I.T. 1700, 1721 (Ct. Int'l Trade 2012)....................................................................13

*Star Fruits S.N.C. v. United States,*
393 F.3d 1277 (Fed. Cir. 2005) ....................................................................................... 8

*Sweet Harvest Foods v. United States,*
669 F. Supp. 3d 1346 (Ct. Int'l Trade 2023) ....................................................................7

*Vinh Hoan Corp. v. United States,*
179 F. Supp. 3d 1208, 1228 (Ct. Int'l Trade 2016)........................................................13

*Zhengzhou Harmoni Spice Co. v. United States,*
33 C.I.T. 453, 458, 461-71 (Ct. Int'l Trade 2009)....................................................12, 13

**Statutes and Regulations**

19 C.F.R. § 351.206(h)(1)............................................................................................9, 17

19 U.S.C. §§ 1516a(a)(2)(A)(i)(I).................................................................................1, 2

**Court No. 25-00202**

19 U.S.C. § 1516a(a)(2)(B)(i)...............................................................................1, 2

19 U.S.C. § 1516a(b)(1)(B)(i)...................................................................................7

19 U.S.C. § 1671d........................................................................................................2

19 U.S.C. § 1673b(e)(1)(B).........................................................................................9

19 U.S.C. § 1673d .......................................................................................................2

19 U.S.C. § 1673d(a)(3)..........................................................................................2, 9

19 U.S.C. § 1673d(a)(3)(B)....................................................................................7, 17

19 U.S.C. § 1673d(c)(4) .............................................................................................1

28 U.S.C. § 1581(c)......................................................................................................2

**Other Authorities**

*Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order*, 90 Fed. Reg. 38759 (Aug. 12, 2025) ............................................................3, 6

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part,*
90 Fed. Reg. 26530 (June 23, 2025) ....................................................................3, 6

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Determination of Sale at Less-Than-Fair-Value Investigation, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination and Extension of Provisional Measures,*
90 Fed. Reg. 8517 (Jan. 30, 2025) .................................................................6, 14, 15

Court No. 25-00202

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD

### I.    Introduction

Plaintiffs, Kangdi Electric Vehicle (Hainan) Co., Ltd., and SC Autosports, LLC, dba Kandi America (hereinafter referred to as "Kangdi Plaintiffs"), respectfully submit this memorandum in support of their Rule 56.2 motion for judgment on the agency record in the above-captioned matter. For the reasons set forth herein, the critical circumstances determination regarding low speed personal transportation vehicles ("LSPTV") from the People's Republic of China ("China") issued by the United States Department of Commerce ("Commerce") is not in accordance with law and is unsupported by substantial evidence. Thus, Kangdi Plaintiffs respectfully request that this determination be reversed and remanded to Commerce.

More specifically, this action challenges the affirmative critical circumstances determination of the Commerce regarding LSPTV from China, resulting in the issuance of an antidumping duty order that directs U.S. Customs and Border Protection ("CBP") to continue the retroactive suspension of liquidation and the posting of a cash deposit, bond, or other security, as authorized under certain circumstances, pursuant to 19 U.S.C. § 1673d(c)(4). Kangdi Plaintiffs challenge this determination pursuant to section 516a of the Tariff Act of 1930 (the "Act"), which provides that certain final determinations on the record are reviewable by this Court, including affirmative findings of critical circumstances. 19 U.S.C. §§

1

**Court No. 25-00202**

1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(i) *et seq*. This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

Critical circumstances are an extraordinary measure and a significant departure from the default prospective application of remedies intended to curb sales at less than fair value. Section 735(a)(3) of the Tariff Act of 1930 sets forth the criteria for an affirmative determination of critical circumstances. The following criteria must be met: (A)(i) there is a history of dumping and material injury by reason of dumped imports in the United States of the subject merchandise, or (ii) the person by whom, or for whose account, the merchandise was imported knew or should have known that the exporter was selling the subject merchandise at less than fair value and that there was likely to be material injury by reason of such sales; and (B) there have been massive imports of the subject merchandise over a relatively short period. *See* 19 U.S.C. § 1673d(a)(3). These criteria have not been met in the investigation of LSPTVs from China and the subsequent determination that gives rise to the instant action.

## II.    Statement Pursuant to Rule 56.2(c)

A. Administrative Determination Under Review

This action is an appeal of the final affirmative determination of critical circumstances issued by the International Trade Administration ("ITA") of Commerce under 19 U.S.C. §§ 1671d and 1673d, as implemented in the antidumping duty order on LSPTV from China (case no. A-570-176). Commerce's final affirmative determination of antidumping and of critical circumstances

2

**Court No. 25-00202**

regarding imports of LSPTV from China was published on June 23, 2025, in the Federal Register. *Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part,* 90 Fed. Reg. 26530 (June 23, 2025) ("Commerce's Critical Circumstances Determination") (PR 699). The final antidumping duty order was issued by the Department of Commerce on August 12, 2025. *Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order*, 90 Fed. Reg. 38759 (August 12, 2025) ("Commerce's Amended Final AD Determination") (PR 720).

B.  Issues Presented

Kangdi Plaintiffs raise challenges to the final affirmative critical circumstances determination by Commerce pertaining to the following issues:

1. *Does Substantial Record Evidence Support Commerce's Finding That There Was A Massive Increase In Imports Over A Relatively Short Period?*

No, Commerce failed to consider evidence on the record. Kangdi Plaintiffs submitted evidence showing that during the comparison period used by Commerce to evaluate critical circumstances, the volume of imports in the post-petition period mirrors the expected increase in the third and fourth quarters, consistent with the data on the record for the three years prior to the filing of the petition. *See* Kangdi Electric Vehicle (Hainan) Co., Ltd., *Certain Low Speed Personal Transportation*

3

**Court No. 25-00202**

*Vehicles from the People's Republic of China (A-570-176): Case Brief of Kangdi Electric Vehicle (Hainan) Co., Ltd.*, dated May 14, 2025 ("Kangdi Case Brief"), at 7-8 (PR 659/CR 663). Mandatory respondent, Xiamen Dalle New Energy Automobile Co., Ltd., also submitted seasonality arguments in its case brief. *See* Xiamen Dalle New Energy Automobile Co., Ltd., *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Case Brief*, dated May 14, 2025 ("Xiamen Dalle Case Brief"), at 19-20 (PR 660/CR 664). The increase is consistent with seasonal trends, and otherwise did not vastly deviate from expected industry import patterns.

In the Issues and Decision Memorandum, Commerce stated that three years of import data is required to conduct a seasonality analysis and that Plaintiffs' submission of this data was untimely as they did so in their case brief. *See* Memorandum from Scot Fullerton to Abdelali Elouaradia, *Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China*, dated June 16, 2025, at 14-15 (PR 692). Commerce further declared that it did not examine the issue of seasonality in the LSPTV industry due to the lack of timely data on the record. *Id.*, at 15. Commerce's refusal to properly conduct a seasonality analysis for lack of data on the record is unsupported by the record evidence considering the Petitioner submitted this information to the record in its Critical Circumstances Allegation. *See* American Personal Transportation Vehicle Manufacturers Coalition, *Low-Speed Personal*

4

**Court No. 25-00202**

*Transportation Vehicles from the People's Republic of China: Critical Circumstances Allegation*, dated October 22, 2024 ("Petitioner's Critical Circumstances Allegation"), at Exhibit 1 (PR 298/CR 247). Therefore, Commerce's allegations that the record lacked import data necessary for a seasonality analysis are unfounded.

> 2. *Was Commerce's Use of Import Data for HTSUS 8703.10.5030 to Determine Whether Imports Were "Massive" Reasonable and Supported By Substantial Evidence?*

No, HTSUS subheading 8703.10.5030 is undisputedly a basket category that encompasses significant quantities of non-subject merchandise. Commerce's use of this HTSUS code to determine whether imports by separate-rate companies were "massive" is unreasonable and results in unreliable data upon which Commerce based its determination. Furthermore, Commerce alleged that there was nothing on the record indicating that the import data for HTSUS 8703.10.5030 was not reliable despite multiple interested parties raising arguments during the investigation. *Issues and Decision Memorandum*, at 14 (PR 692).

C. Request for Court Order and Relief Sought

Kangdi Plaintiffs respectfully request that the Court remand the challenged agency action for further consideration regarding the issues identified in Subsection B above.

III. **Procedural Background And Determination Under Review**

The American Personal Transportation Vehicles Manufacturers Coalition ("Petitioner") filed petitions concurrently at the United States International Trade

5

**Court No. 25-00202**

Commission (the "Commission") and at Commerce on June 20, 2024, alleging sales at less than fair value of LSPTV from China.

Commerce initiated its investigation on July 11, 2024, and published its preliminary results on January 30, 2025. *Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Determination of Sale at Less-Than-Fair-Value Investigation, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination and Extension of Provisional Measures*, 90 Fed. Reg. 8517 (January 30, 2025) ("Commerce's Preliminary Determination") (PR 590).

On August 12, 2025, Commerce published its amended affirmative final determinations and the antidumping order in the antidumping investigation of LSPTV from China. *See Commerce's Amended Final AD Determination* (PR 720). Commerce determined no critical circumstances existed with respect to imports from Chinese producer Xiamen Dalle but found critical circumstances existed for all other producers. *See Commerce's Critical Circumstances Determination*, at 26531 (PR 699).

The Commission likewise made affirmative determinations of sales at less than fair value and critical circumstances. *See Commerce's Amended Final AD Determination*, at 38760 (PR 720).

For the reasons set forth herein, Kangdi Plaintiffs submit that the affirmative finding of critical circumstances by Commerce is unsupported by the agency record and otherwise contrary to law.

6

Court No. 25-00202

## IV.    Standard of Review

Any Commerce determination, finding, or conclusion "unsupported by substantial evidence on the record, or otherwise not in accordance with law" shall be held unlawful. 19 U.S.C. § 1516a(b)(1)(B)(i). In determining whether an agency determination, finding, or conclusion is based on substantial evidence, the court evaluates whether the agency action is reasonable when the record as a whole is taken into account. *Sweet Harvest Foods v. United States*, 669 F.Supp.3d 1346, 1350 (Ct. Int'l Trade 2023).

"Substantial evidence has been described as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005)). "The existence of substantial evidence is determined "by considering the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Atl. Sugar, Ltd. v. United States,* 744 F.2d 1556, 1562 (Fed.Cir. 1984)). In sum, when evaluating an issue related to substantial evidence, the Court considers "whether the challenged agency action was reasonable given the circumstances prevented by the whole record." *Sweet Harvest*, 669 F.Supp.3d at 1351.

Specifically, as it pertains to a finding of critical circumstances, Commerce can only find critical circumstances if "there have been massive imports of the subject merchandise over a relatively short period." 19 U.S.C. § 1673d(a)(3)(B). The

7

record evidence does not support such a finding in the investigation underlying the instant action.

For Commerce's determination to be "in accordance with law," it must comply with the antidumping duty statutes. Although Commerce has a certain degree of discretion, it must exercise such discretion reasonably and not act arbitrarily. *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1372 (Fed. Cir. 2017). Commerce must exercise reasonable judgment and discretion when weighing relevant factors; its decision must be based on correct interpretation of the law and on factual findings supported by substantial evidence. *See Star Fruits S.NC. v. U.S.*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) ("An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors.").

The Court shall review Commerce's conclusions of law at issue in the instant action *de novo. Jiaxing Bro. Fastener Co. v. United States,* 822 F.3d 1289, 1297 (Fed. Cir. 2016). The Court shall similarly review questions of statutory interpretation *de novo. See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-92 (2024) ("{A}gency interpretations of statutes…are *not* entitled to deference.").

## V.    Arguments

Application of retroactive duties to subject imports due to an affirmative finding of critical circumstances is an extraordinary measure that departs from the default prospective application of such trade remedies. The narrowly circumscribed

**Court No. 25-00202**

exception requires Commerce to make a finding, supported by substantial evidence on the record, that (1) there have been massive imports of the subject merchandise over a relatively short period and (2) there is a history of dumping and material injury by reason of dumped imports in the United States or elsewhere of the subject merchandise or the person by whom, or for whose account, the merchandise was imported knew or should have known that the exporter was selling the subject merchandise at less than its fair value and was likely to cause material injury as a result of such sales. *See* Section 733(e)(1)(B) of the Act, codified as 19 U.S.C. § 1673b(e)(1)(B), and Section 735(a)(3) of the Act, codified as 19 U.S.C. § 1673d(a)(3).

19 C.F.R. § 351.206(h)(1) sets forth the criteria for determining whether imports have been "massive." In accordance with the regulation, Commerce normally examines: (i) the volume and value of imports; (ii) **seasonal trends**; and (iii) the share of domestic consumption accounted for by the imports. 19 C.F.R. § 351.206(h)(1) (emphasis added); *see also* Memorandum from Scot Fullerton to Abdelali Elouaradia, *Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China*, January 23, 2025 ("Preliminary Determination"), at 32 (PR 575). Nonetheless, in the investigation underlying the instant action, Commerce outright refused to conduct a seasonality analysis. *Issues and Decision Memorandum*, at 15 ("[W]e have not examined the seasonality of the LSPTV industry in the final determination.") (PR 692).

9

**Court No. 25-00202**

The record lacks substantial evidence to indicate there has been a massive surge in imports. To the contrary, the record evidence refutes the claim that imports in the post-petition period are massive when seasonality and historical trends are considered. Moreover, the HTSUS subheading used by Commerce for its analysis is overly broad and materially skews the comparison between base and comparison periods, leading to an affirmative critical circumstances determination based on unreliable data.

A. Commerce Ignored Data on the Record and Failed to Conduct a Seasonality Analysis

Commerce failed to consider evidence submitted by Kangdi Plaintiffs showing that the post-petition import volume in the comparison period—covering the third and fourth quarters—mirrors the expected increase for those quarters. Specifically, data on the record for the three years prior to the filing of the petition clearly demonstrates that subject imports increase each year during the third and fourth quarters. This established seasonal and historical pattern indicates that the observed volume increase was consistent with general industry import patterns and not a "massive" surge over a relatively short period intended to undermine the remedial effect of the antidumping duty order.

To determine whether there has been a "massive" surge of imports of subject merchandise entered between the time the petition was filed and the preliminary determination, Commerce normally examines the factors set forth in 19 CFR 351.206(h)(1), which includes seasonal trends. When conducting a seasonality

10

**Court No. 25-00202**

analysis, "Commerce normally relies on a minimum of three years of import data." *Issues and Decision Memorandum*, at 14 (PR 692). In the determination giving rise to the instant action, Commerce failed to conduct a seasonality analysis, alleging that "[w]hile Kangdi provided [three years of import data] in its case brief, [...] it was submitted untimely." *Id.*, at 14-15.

Commerce's assertion that Kangdi's data submission was untimely is not supported by the record. In its case brief, Kangdi did not submit any new factual information relating to import data for subject merchandise from 2021 to 2023. *Kangdi Case Brief*, at 7-8 (PR 659/CR 663). Kangdi's case brief merely refers to import data already placed on the record by Petitioner. *Petitioner's Critical Circumstances Allegation*, at Exhibit 1 (PR 298/CR 247). In its Critical Circumstances Allegation, Petitioner placed import data, including both customs value in U.S. dollars and quantity, from USITC *Dataweb* for HTSUS 8703.10.5030 from January 2021 to August 2024. *Id.* Therefore, Commerce's categorization of the data Kangdi referenced in its case brief as "untimely" is baseless and contrary to the record. Commerce had the necessary data to conduct a seasonality analysis.

The period for comparison of pre-petition and post-petition levels of subject imports from China for non-examined separate rate companies used by Commerce in the investigation underlying the instant action comprises the six months prior to the filing of the petition to the six months after the filing of the petition, i.e., January 2024 to June 2024 and July 2024 to December 2024. *Issues and Decision Memorandum*, at 13 (PR 692). The increase in imports over the comparison period

11

**Court No. 25-00202**

is consistent with data for three years prior to the petition and seasonal trends in the industry. *Kangdi Case Brief*, at 7-8 (PR 659/CR 663); *Petitioner's Critical Circumstances Allegation*, at Exhibit 1 (PR 298/CR 247). The import data submitted by Petitioner for the period between January 2021 and August 2024 clearly demonstrates the seasonal trends of the subject merchandise sales in the three calendar years prior to the year the petition was filed. *Id.* Imports of subject merchandise consistently demonstrate significant increases in the third and fourth quarters. *Id.*

The import data for the comparison period aligns with historical trends and seasonality. Kangdi Plaintiffs raised this argument in their case brief, and mandatory respondent, Xiamen Dalle, also raised different arguments pertaining to seasonality. *Kangdi Case Brief*, at 7-8 (PR 659/CR 663); *Xiamen Dalle Case Brief*, at 18-20 (PR 660/CR 664). Notwithstanding these arguments addressing seasonality and the requisite import data already having been placed on the record, Commerce refused to conduct a seasonality analysis. *Issues and Decision Memorandum*, at 15 (PR 692).

> B. Commerce's Reliance on HTSUS Subheading 8703.10.5030 to Determine Whether Imports Were "Massive" Was Unreasonable and Unsupported by Substantial Evidence

This Court has consistently held that import data that are overly inclusive, meaning they encompass significant quantities of non-subject or non-representative goods, may render Commerce's determination unsupported by substantial evidence.

12

**Court No. 25-00202**

*See Zhengzhou Harmoni Spice Co. v. United States*, 33 C.I.T. 453, 458, 461-71 (Ct. Int'l Trade 2009) (Surrogate value determination overturned on the grounds that the record evidence relied on was not sufficiently product-specific); *Peer Bearing Co.-Changshan v. United States*, 36 C.I.T. 1700, 1721 (Ct. Int'l Trade 2012) ("If [ ] the Infodrive data on bearing-quality steel represent too small a quantity to support a surrogate value, and if [ ] non-bearing-quality steel is not specific to the input being valued, then diluting the specific data by combining those data with non-specific data cannot improve, and can only compromise, the result."); *Vinh Hoan Corp. v. United States*, 179 F. Supp. 3d 1208, 1228 (Ct. Int'l Trade 2016) ("In light of the record data indicating that non-specific merchandise may have rendered the HTS category nonspecific, Commerce cannot simply rely upon the fact that the word 'sawdust' is in the heading to conclude the data source is specific and not aberrational.")

In the case of *Longkou Haimeng Mach. Co. v. United States*, the background of the case and this Court's holding are apropos:

> Commerce selected the Harmonized Tariff System ("HTS") category 7201.1000 as the product most similar to the reported type of pig iron used by respondents. This subheading covers non-alloy pig iron with a phosphorous content of less than or equal to 0.5 percent…

> Plaintiffs claim that approximately seventy percent of the pig iron imported into India during the POR was Sorelmetal, a high-purity, ductile iron that is not used, and cannot be used, to produce the subject merchandise. [ ] Thus, Plaintiffs argue that Commerce erred in its determination that Indian pig iron imports are specific to the gray pig iron Plaintiffs use to produce the subject merchandise…

13

Court No. 25-00202

> …Accordingly, the Court finds that Commerce's determination that the WTA data constituted the best available information for valuing pig iron was unsupported by substantial evidence on the record.

32 C.I.T. 1142, 1161-2, 1164 (Ct. Int'l Trade 2008) (quote modified).

As these cases demonstrate, to be supported by substantial evidence, Commerce's reliance on trade data must account for nonspecific HTS codes and inclusion of irrelevant products. Otherwise, the results of the investigation may be compromised and unsupported by substantial evidence.

*In casu*, Commerce was tasked with determining whether there have been massive imports of subject merchandise over a relatively short period of time. Commerce first collected monthly shipment data from the Mandatory Respondents[1], and determined that they had massively imported subject merchandise. *See* Letter from Gorden Struck, International Trade Compliance Analyst, Office II, Antidumping and Countervailing Duty Operations re: *Less-Than-Fair-Value Investigation of Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China:* Preliminary Analysis of Critical Circumstances, (Jan. 23, 2025) (the "Critical Circumstances Analysis") (PR 578/CR 608); and *Commerce's Preliminary Determination*, 90 Fed. Reg. at 8517-18 (PR 590).

Next, to determine whether all other companies massively imported subject merchandise Commerce consulted Global Trade Atlas ("GTA") data for HTS code 8703.10.50.30. *See* Critical Circumstances Analysis (PR 578/CR 608). Commerce subtracted the trade volume of the mandatory respondents from the GTA data, and

---

[1] Guangdong Lvtong New Energy Electric Vehicle Technology Co. Ltd. and Xiamen Dalle New Energy Automobile Co. Ltd., (hereinafter the "Mandatory Respondents")

14

**Court No. 25-00202**

determined that the imports of all other companies were massive. *See id.*; *Commerce's Preliminary Determination*, 90 Fed. Reg. at 8517-18 (PR 590).

The issue with Commerce's methodology is that HTS code 8703.10.50.30 is non-specific, as it includes a substantial volume of irrelevant, out-of-scope merchandise. *See* Nivel Parts & Manufacturing Co., LLC, *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China:* Case Brief, May 14, 2025 (PR 658), at 3, n. 8 (quoting U.S. International Trade Commission, *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China*, Pub. No. 5533, at 4 n.10 (Aug. 2024) {"HTS 8703.10.5030 is a basket category and includes an unknown quantity of out-of-scope merchandise, such as electric go-carts and certain vehicle parts."}).

Petitioner has admitted this on the record. *See Certain Low Speed Personal Transportation Vehicles from the People's Republic of China*, Petitions for the Imposition of Antidumping and Countervailing Duties, vol. I, at 28-29 & n. 64 (June 20, 2024) (PR 2/CR 2)("Petitioner believes the non-subject imports share of total U.S. shipments is likely overstated, as they are comprised largely of Japanese imports that appear to be parts and not subject merchandise."); *Id.* at 29 (June 20, 2024) ("[t]he second largest exporter by volume (i.e., Japan) of merchandise under the primary HTSUS code for subject CLSPTVs (i.e., HTSUS 8703.10.5030) appears to have exported primarily spare parts in 2023 as the AUVs are too low to account for finished CLSPTVs or CLSPTV subassemblies.").

15

In the final determination, Commerce also acknowledged that HTS 8703.10.5030 is a "broader basket categor[y], containing both subject and non-subject merchandise," but did not change course or address this issue. *Issues and Decision Memorandum*, at 13 (PR 692). Commerce's only justification was that HTS 8703.10.5030 "represents the code under which LSPTVs are typically classified." *Id.*, at 13-14 (PR 692). Such logic was not acceptable in *Longkou* and similar cases, and it is not acceptable here.

Even modest inclusion of non-subject merchandise can materially skew the comparison between base and comparison periods, leading to false positives in critical circumstances findings. By relying on the diluted, non-specific heading 8703.10.5030 in determining whether imports of subject merchandise were massive, Commerce compromised its final determination. The use of imprecise basket data in this case, including large volumes of non-subject merchandise, without adjustments, corroboration, or explanation cannot satisfy the substantial evidence standard.

## VI.    Conclusion

In light of the foregoing, it is clear that Commerce has failed to adequately examine the evidence on the record in accordance with the legal standard. Notably, Commerce failed to adequately consider the evidence pertaining to seasonal sales trends despite multiple interested parties submitting arguments and evidence to that effect. Moreover, Commerce based its determination on import data for an HTSUS code that encompasses merchandise not subject to the investigation on LSPTV from China, resulting in artificially inflated import data for subject

16

**Court No. 25-00202**

merchandise that was considered when making the determination. The determination of critical circumstances made by the Commerce is thus unsupported by evidence on the record as to whether imports of subject merchandise were "massive" pursuant to 19 U.S.C. § 1673d(a)(3)(B) and 19 C.F.R. § 351.206(h)(1). As a result, Commerce's final affirmative critical circumstances determination is unsupported by record evidence and otherwise contrary to law.

Therefore, Kangdi Plaintiffs respectfully move, for the reasons set forth herein, this Court to find that agency findings, conclusions, and decisions with respect to the critical circumstances are not supported by substantial evidence or otherwise contrary to law. Kangdi Plaintiffs further move this Court to remand this determination to Commerce for disposition consistent with the Court's final opinion and provide Kangdi Plaintiffs with such other and further relief as this Court may deem just and proper.

Dated: April 13, 2026

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670

17

**Court No. 25-00202**

*Counsel for Kangdi Electric Vehicle
(Hainan) Co., Ltd. and SC Autosports,
LLC, dba Kandi America*

18

**Certificate of Compliance with Chambers Procedure 2(B)(2)**

The undersigned hereby certifies that the foregoing brief contains 4,082 words, exclusive of the table of contents, table of authorities, and counsel's signature block, and therefore complies with the maximum word count limitation set forth in the Chamber Procedures of the U.S. Court of International Trade.

Dated: April 13, 2026

<div style="margin-left: 45%;">

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
Email: sliang@customscourt.com
/s/ Johnathan Foege
Johnathan Foege, Esq.
Fla. Bar No. 1047550
Email: jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670

*Counsel for Kangdi Electric Vehicle (Hainan) Co., Ltd. and SC Autosports, LLC, dba Kandi America*

</div>

19