**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

KANGDI ELECTRIC VEHICLE (HAINAN)
CO., LTD., ET AL,

              Plaintiffs,

        and

THE AMERICAN PERSONAL
TRANSPORTATION VEHICLE
MANUFACTURERS COALITION,

            Consolidated Plaintiff,

        v.

UNITED STATES,

            Defendant,

        and

THE AMERICAN PERSONAL
TRANSPORTATION VEHICLE
MANUFACTURERS COALITION AND
XIAMEN DALLE NEW ENERGY
AUTOMOBILE CO., LTD., INC.,

            Defendant-Intervenors.

Before: Hon. Jane A. Restani,
       Judge

Consol. Court No. 25-00202

**PROPOSED ORDER**

Upon consideration of the motion of Plaintiff the American Personal Transportation

Vehicle Manufacturers Coalition for judgment on the agency record, and all other pertinent papers

and proceedings herein, it is hereby,

**ORDERED**, that Plaintiff's motion for judgment on the agency record is granted; and it is

further

**ORDERED**, that this action be remanded to the U.S. Department of Commerce for

proceedings consistent with this Court's opinion.

**Ct. No. 25-00202**

**SO ORDERED**.

Date: _____, 2026                    _____
                                                Hon. Jane A. Restani, Judge

Ct. No. 25-00202

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KANGDI ELECTRIC VEHICLE (HAINAN) CO., LTD., ET AL, <br><br>         **Plaintiffs,** <br><br>         **and** <br><br> THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION, <br><br>         **Consolidated Plaintiff,** <br><br>         **v.** <br><br> UNITED STATES, <br><br>         **Defendant,** <br><br>         **and** <br><br> THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION AND XIAMEN DALLE NEW ENERGY AUTOMOBILE CO., LTD., INC., <br><br>         **Defendant-Intervenors.** | **Before: Hon. Jane A. Restani, Judge** <br><br> **Consol. Court No. 25-00202** |

## MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiff the American Personal Transportation Vehicle Manufacturers Coalition hereby moves for judgment upon the agency record with respect to the final determination issued by the U.S. Department of Commerce ("Commerce") in the antidumping duty investigation of certain low speed personal transportation vehicles from the People's Republic of China. *Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China*, 90 Fed. Reg. 26,530 (Dep't Commerce June 23, 2025) (final affirmative deter. of sales at less than fair value and final affirmative deter. of critical circumstances, in part).

Ct. No. 25-00202

Plaintiff respectfully moves, for the reasons explained in the accompanying memorandum, that this Court find Commerce's final determination was unsupported by substantial evidence or otherwise not in accordance with law. Specifically, Plaintiff moves that the Court find that Commerce's determination to consider December 2024 import data in its critical circumstances analysis was unsupported by substantial evidence and otherwise not in accordance with law.

Plaintiff thus respectfully requests that the Court remand Commerce's determination for disposition consistent with the Court's final opinion.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Robert E. DeFrancesco III, Esq.
Derick G. Holt, Esq.
Theodore P. Brackemyre, Esq.
Stephen A. Morrison, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Personal Transportation Vehicle Manufacturers Coalition*

Dated: April 13, 2026

4

NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **KANGDI ELECTRIC VEHICLE (HAINAN) CO., LTD., ET AL,** | |
| Plaintiffs, | **Before: Hon. Jane A. Restani, Judge** |
| and | |
| **THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,** | **Consol. Court No. 25-00202** |
| Consolidated Plaintiff, | **NON-CONFIDENTIAL VERSION** |
| v. | |
| **UNITED STATES,** | **Business Proprietary Information Removed from Pages 10-11, 14, 16-19** |
| Defendant, | |
| and | |
| **THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION AND XIAMEN DALLE NEW ENERGY AUTOMOBILE CO., LTD., INC.,** | |
| Defendant-Intervenors. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONSOLIDATED PLAINTIFF THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

NON-CONFIDENTIAL VERSION

Robert E. DeFrancesco III, Esq.
Derick G. Holt, Esq.
Theodore P. Brackemyre, Esq.
Stephen A. Morrison, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC  20036
(202) 719-7000

*Counsel to the American Personal
Transportation Vehicle Manufacturers
Coalition*

Dated: April 13, 2026

Consol Ct. No. 25-00202                                    NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   RULE 56.2 STATEMENT ................................................................................. 1

      A.   Determination Presented for Review ...................................................1

      B.   Issues Presented ...................................................................................1

      C.   Request for Court Order and Decision Sought ....................................2

III.  LEGAL AND FACTUAL BACKGROUND .................................................... 2

      A.   Legal Background .................................................................................2

      B.   Factual Background ..............................................................................4

IV.   STANDARD OF REVIEW .............................................................................. 8

V.    SUMMARY OF ARGUMENT ........................................................................ 9

VI.   ARGUMENT .................................................................................................. 10

      A.   Commerce's Negative Critical Circumstances with Respect to Xiamen
           Dalle I Not Supported by Substantial Evidence ..............................10

VII.  CONCLUSION .............................................................................................. 20

i

Consol Ct. No. 25-00202                                NON-CONFIDENTIAL VERSION

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*AMS Assocs. Inc. v. United States,*
  737 F.3d 1338 (Fed. Cir. 2013)................................................................................9

*Burlington Truck Lines, Inc. v. United States,*
  371 U.S. 156 (1962)...............................................................................................9

*Consol. Edison Co. v. N.L.R.B.,*
  305 U.S. 197 (1938)...............................................................................................8

*Daewoo Elecs. Co. v. Int'l Union of Elec., Tech., Salaried & Mach. Workers,*
  *AFL-CIO*, 6 F.3d 1511 (Fed. Cir. 1993) ...............................................................9

*Gallant Ocean (Thailana) Co. v. United States,*
  602 F.3d 1319 (Fed. Cir. 2010)..............................................................................9

*Jilin Henghe Pharm. Co. v. United States,*
  342 F. Supp. 2d 1301 (Ct. Int'l Trade 2004) .........................................................9

*Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983).................................................................................................9

*N.L.R.B. v. Columbian Enameling & Stamping Co.,*
  306 U.S. 292 (1939)...............................................................................................9

*SKF USA Inc. v. United States,*
  630 F.3d 1365 (Fed. Cir. 2011)........................................................................9, 17

*Sunpreme Inc. v. United States,*
  737 F.3d 1338 (Fed. Cir. 2020)..............................................................................9

*Universal Camera Corp. v. N.L.R.B.,*
  340 U.S. 474 (1951)...............................................................................................8

*USEC Inc. v. United States,*
  259 F. Supp. 2d 1310 (Ct. Int'l Trade 2003) .....................................................9, 18

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)..................................................................................8

19 U.S.C. § 1671d(a)(2)............................................................................................3

19 U.S.C. § 1673d(a)(3).......................................................................................2, 18

Consol Ct. No. 25-00202                                         NON-CONFIDENTIAL VERSION

## Regulations

19 C.F.R. § 351.206 .........................................................................................................................3

19 C.F.R. § 351.206(h) ....................................................................................................................2

19 C.F.R. § 351.206(h)(2).............................................................................................................18

## Administrative Materials

*Certain Low Speed Personal Transportation From the People's Republic of
    China*, 90 Fed. Reg. 8,517 (Dep't Commerce Jan. 30, 2025)....................................................7

*Certain Low-Speed Personal Transportation Vehicles From the People's
    Republic of China*, 90 Fed. Reg. 26,530 (Dep't Commerce June 23, 2025) ............................1

*Certain Low Speed Personal Transportation Vehicles From the People's Republic
    of China*, 89 Fed. Reg. 57,865 (Dep't Commerce July 16, 2024) .............................................4

*Certain Low Speed Personal Transportation Vehicles From the People's Republic
    of China*, 89 Fed. Reg. 96,942 (Dep't Commerce Dec. 6, 2024) ............................................13

*Certain Pea Protein From the People's Republic of China*,
    89 Fed. Reg. 55,559 (Dep't Commerce July 5, 2024) ..........................................................3, 11

*Certain Quartz Surface Products From India*,
    85 Fed. Reg. 25,398 (Dep't Commerce May 1, 2020) ...................................................3, 11, 12

*Certain Vertical Shaft Engines Between 225cc and 999cc, and Parts Thereof
    From the People's Republic of China*, 86 Fed. Reg. 1,936 (Dep't Commerce
    Jan. 11, 2021)......................................................................................................................3, 11

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*,
    73 Fed. Reg. 31,970 (Dep't Commerce June 5, 2008) .........................................................3, 18

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*,
    72 Fed. Reg. 63,875 (Dep't Commerce Nov. 13, 2007)...............................................11, 12, 13

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
    From Thailand*, 89 Fed. Reg. 96,214 (Dep't Commerce Dec. 4, 2024)..................................15

*Oil Country Tubular Goods from Mexico*,
    87 Fed. Reg. 59,041 (Dep't Commerce Sep. 29, 2022).............................................................15

*Thermoformed Molded Fiber Products from the Socialist Republic of Vietnam*,
    90 Fed. Reg. 46,805 (Dep't Commerce Sep. 30, 2025).............................................................18

**Consol Ct. No. 25-00202**                                    NON-CONFIDENTIAL VERSION

**Other Authorities**

Uruguay Rounds Agreement Act, H.R. Rep. 103-316, *reprinted in* 1994
    U.S.C.C.A.N. 4040 .................................................................................................15

Consol. Ct. No. 25-00202                                    NON-CONFIDENTIAL VERSION

## I.      INTRODUCTION

On behalf of the American Personal Transportation Vehicle Manufacturers Coalition ("Plaintiff"), consolidated plaintiff and defendant-intervenor in this action, we respectfully submit this opening brief in Plaintiff's challenge of the U.S. Department of Commerce's ("Commerce") negative critical circumstances determination in the antidumping investigation of *Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China*.

## II.     RULE 56.2 STATEMENT

### A.      Determination Presented for Review

Commerce published the final results of the antidumping duty investigation under challenge as *Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China*, 90 Fed. Reg. 26,530 (Dep't Commerce June 23, 2025) (final affirmative deter. of sales at less than fair value and final affirmative deter. of critical circumstances, in part), P.R. 699 ("*Final Determination*"). Commerce laid out the bases for its determination in an accompanying issues and decision memorandum, P.R. 692 ("IDM").

### B.      Issues Presented

Plaintiff raises the following challenge to the *Final Determination*:

1.  Whether Commerce's critical circumstances determination was unsupported by substantial evidence and was otherwise not in accordance with law because inclusion of Xiamen Dalle New Energy Automobile Co., Ltd.'s ("Xiamen Dalle") December 2024 data in its calculation of total imports during the comparison period for purposes of its critical circumstances analysis is inconsistent with its established practice;
2.  Whether inclusion of the December 2024 data distorted the critical circumstances analysis;
3.  Whether Commerce failed to provide an adequate explanation for its departure from its established practice to determine the end of the critical circumstances comparison period; and
4.  Whether Commerce improperly relied on non-import data to calculate total imports for purposes of its critical circumstances analysis, contrary to Commerce's statute and regulations.

### C.    Request for Court Order and Decision Sought

Plaintiff respectfully requests that this Court hold that Commerce's negative critical circumstances determination with respect to Xiamen Dalle was unsupported by substantial evidence and not otherwise in accordance with law, and remand the investigation to the agency for further reconsideration.

### III.    LEGAL AND FACTUAL BACKGROUND

### A.    Legal Background

Pursuant to the Tariff Act of 1930 (the "Act"), *as amended*, Commerce will make a finding that critical circumstances exist where (1) there is a history of dumping and material injury by reason of dumped imports in the United States or elsewhere of the subject merchandise, or the person by whom the subject merchandise was imported knew or should have known that the exporter was selling the subject merchandise at less than its fair value and that there would be material injury by reason of such sales and (2) there have been massive imports of the subject merchandise over a relatively short period. 19 U.S.C. § 1673d(a)(3).

In determining whether imports of subject merchandise have been "massive," Commerce will normally examine: (i) the volume and value of the imports; (ii) seasonal trends; and (iii) the share of domestic consumption accounted for by the imports. *See* 19 C.F.R. § 351.206(h). Commerce will normally consider a "relatively short period" as the period beginning on the date the proceeding begins and ending at least three months later. *Id*. § 351.206(i). In other words, Commerce normally compares the change in the volume and value of imports between the period immediately preceding the filing of the petition (*i.e.*, the "base period") with the period following the filing of the petition (*i.e.*, the "comparison period"). In order to reach an affirmative critical circumstances determination, imports must have increased by at least 15 percent between the base period and the base period and the comparison period.

2

Commerce's practice is to rely on the longest period for which information is available from the month that the petition was filed through the date of the comparison period for purposes of making its critical circumstances determinations. *See, e.g.*, Issues and Decision Memorandum accompanying *Certain Vertical Shaft Engines Between 225cc and 999cc, and Parts Thereof From the People's Republic of China*, 86 Fed. Reg. 1,936 (Dep't Commerce Jan. 11, 2021) (final affirmative deter. of sales at less than fair value and final affirmative critical circumstances deter.) at 40 ("*Vertical Shaft Engines from China* IDM"). However, in determining the base and comparison periods for purposes of critical circumstances in antidumping duty investigations in which there is a companion countervailing duty investigation, Commerce limits the comparison period by the month that it begins imposing preliminary countervailing duties on subject merchandise in the countervailing duty case. *See* Issues and Decision Memorandum accompanying *Certain Pea Protein From the People's Republic of China*, 89 Fed. Reg. 55,559 (Dep't Commerce July 5, 2024) (final affirmative deter. of sales at less than fair value and final affirmative critical circumstances deter.) at 5 ("*Pea Protein from China* IDM").

Further, where a preliminary determination is published in the first half of the month, Commerce does not include that month in the comparison period. Issues and Decision Memorandum accompanying *Certain Quartz Surface Products From India*, 85 Fed. Reg. 25,398 (Dep't Commerce May 1, 2020) (final affirmative countervailing duty deter. and final affirmative deter. of critical circumstances, in part) at 4 ("*Quartz Surface Products from India* IDM"); Issues and Decision Memorandum accompanying *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 31,970 (Dep't Commerce June 5, 2008) (notice of final deter. of sales at less than fair value and affirmative final deter. of critical circumstances) at cmt. 14 (citing 19 U.S.C. § 1671d(a)(2) and 19 C.F.R. § 351.206) ("{Commerce} is continuing to define

3

base and comparison periods within the bounds of its normal practice by including June 2007 in the post-petition period, and extending the comparison period up through the month prior to preliminary determination in the CVD investigation of CWP, to the extent shipment data are available on the record to do this. *We have not included the month of the preliminary determination in the CVD investigation of CWP because the preliminary determination in the CVD investigation of CWP was published in the first half of the month.* {Commerce's} position is supported by both law and prior decisions.") (emphasis added) ("*CWP from China* IDM").

## B.    Factual Background

Commerce initiated the antidumping investigation of *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China* on July 10, 2025, following receipt of a petition filed with Commerce and the United States International Trade Commission (the "Commission") by Plaintiff on June 20, 2024. *See Certain Low Speed Personal Transportation Vehicles From the People's Republic of China*, 89 Fed. Reg. 57,865 (Dep't Commerce July 16, 2024) (initiation of less-than-fair-value invs.), P.R. 50.

Commerce issued quantity and value ("Q&V") questionnaires to Chinese producers of low-speed personal transportation vehicles ("LSPTVs"). *See* Memorandum from Jerry Xiao, Int'l Trade Compliance Analyst, Off. II, AD/CVD Operations, through Minoo Hatten, Director, Off. II, AD/CVD Operations, to Scot Fullerton, Acting Deputy Assistant Sec'y for AD/CVD Operations, re: *Less-Than-Fair-Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Respondent Selection* (Aug. 23, 2024) at 2, C.R. 196, P.R. 229. Based on the responses to the Q&V questionnaires, Commerce selected two respondents, Guangdong Lvtong New Energy Electric Vehicle Technology Co., Ltd. ("Lvtong") and Xiamen Dalle. *Id.* at 1.

On October 22, 2024, Plaintiff filed a critical circumstances allegation with Commerce, alleging that there had been massive imports of subject LSPTVs over a relatively short period of time following the filing of the petition. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Low-Speed Personal Transportation Vehicles from the People's Republic of China: Critical Circumstances Allegations* (Oct. 22, 2024) at 11-12, C.R. 247, P.R. 298. Commerce initiated on the critical circumstances allegation and issued Xiamen Dalle and Lvtong requests for monthly quantity and value shipment data. *See* Letter from Christopher Hargett, Program Manager, AD/CVD Operations, Off. II, to Xiamen Dalle New Energy Automobile Co., Ltd., re: *Less-Than-Fair Value Investigations of Low-Speed Personal Transportation Vehicles from the People's Republic of China: Request for Monthly Quantity and Value Shipment Data* (Oct. 23, 2024) ("Req. for Xiamen Dalle Q&V Data"), P.R. 297; Letter from Christopher Hargett, Program Manager, AD/CVD Operations, Off. II, to Guangdong Lvtong New Energy Electric Vehicle Technology Co., Ltd., re: *Less-Than-Fair Value Investigations of Low-Speed Personal Transportation Vehicles from the People's Republic of China: Request for Monthly Quantity and Value Shipment Data* (Oct. 29, 2024) ("Req. for Lvtong Q&V Data"), P.R. 312. Commerce requested that both Xiamen Dalle and Lvtong provide Q&V data for subject merchandise shipped to the United States from July 2023 through the last day of the month of the publication of the preliminary determination in the investigation. *See* Req. for Xiamen Dalle Q&V Data; Req. for Lvtong Q&V Data.

Over the next few months, Xiamen Dalle and Lvtong provided their monthly Q&V data to Commerce. *See* Letter from Clark Hill, PLC to Sec'y Commerce, re: *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Submission of Monthly Quantity and Value Data* (Jan. 15, 2025) ("Xiamen Dalle Jan. 15 Q&V"), C.R. 597, P.R. 555; Letter from Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP to Sec'y Commerce, re: *Lvtong's*

*Response for December 2024 Q&V Shipment in the Less Than Fair Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China (A-570-176)* (Jan. 15, 2025) ("Lvtong Jan. 15 Q&V"), C.R. 594, P.R. 553; Letter from Clark Hill, PLC to Sec'y Commerce, re: *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Submission of Monthly Quantity and Value Data* (Dec. 16, 2024) ("Xiamen Dalle Dec. 16 Q&V"), C.R. 418, P.R. 448; Letter from Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP to Sec'y Commerce, re: *Lvtong's Response for November 2024 Q&V Shipment in the Less Than Fair Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China (A-570-176)* (Dec. 16, 2024) ("Lvtong Dec. 16 Q&V"), C.R. 417, P.R. 446; Letter from Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP to Sec'y Commerce, re: *Lvtong's Response for October 2024 Q&V Shipment in the Less Than Fair Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China (A-570-176)* (Nov. 15, 2024), C.R. 326, P.R. 356; Letter from Clark Hill, PLC to Sec'y Commerce, re: *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Submission of Monthly Quantity and Value Data* (Nov. 15, 2024) ("Xiamen Dalle Nov. 15 Q&V"), C.R. 323, P.R. 354; Letter from Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP to Sec'y Commerce, re: *Lvtong's Response for Monthly Q&V Shipment Data Questionnaire in the Less Than Fair Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China (A-570-176)* (Nov. 5, 2024), C.R. 314, P.R. 322; Letter from Clark Hill, PLC to Sec'y Commerce, re: *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Response to the Critical Circumstances Quantity and Value Data Questionnaire* (Nov. 4, 2024) ("Xiamen Dalle Nov. 4 Q&V"), C.R. 311, P.R. 320.

In the preliminary determination, Commerce determined that critical circumstances existed regarding imports of subject merchandise with respect to Lvtong and Xiamen Dalle. *See* Preliminary Decision Memorandum accompanying *Certain Low Speed Personal Transportation From the People's Republic of China*, 90 Fed. Reg. 8,517 (Dep't Commerce Jan. 30, 2025) (prelim. affirmative deter. of sale at less-than-fair-value inv., prelim. affirmative deter. of critical circumstances, postponement of final deter. and extension of provisional measures) at 36 ("PDM"), P.R. 575. First, Commerce determined that importers of subject merchandise knew or should have known that Chinese exporters were selling LSPTVs at less-than-fair-value and that there was likely to be material injury to the domestic industry by reason of such sales. *Id*. at 34. Commerce also found that imports of subject merchandise had been massive over a relatively short period of time. *Id*. at 35-36.

In finding that imports of subject merchandise had been massive, Commerce compared the total volume of shipments from each respondent during a five-month base period from February 2024 through June 2024 with a five-month comparison period from July 2024 through November 2024. *Id*. at 35. Commerce noted that its practice is to base the critical circumstances analysis on all available data, using base and comparison periods of no less than three months. *Id*. at 35. At the time of its preliminary determination, Commerce had received and analyzed critical circumstances quantity and value data from Xiamen Dalle and Lvtong for December 2024. *Id*. at 6-7. However, Commerce noted that, in accordance with its practice, the agency was limiting the comparison period by the month that Commerce began imposing preliminary countervailing duties on subject imports. *Id*. at 35. Commerce further explained that, in this case, it had begun imposing preliminary countervailing duties on subject merchandise on December 6, 2024 (and had issued its determination in November 2024), and thus, in accordance with its practice, excluded

7

December 2024 from the comparison period. *Id*. Analyzing changes in imports between these two periods, Commerce determined that both Lvtong and Xiamen Dalle had increased imports by more than 15 percent from the base period to the comparison period. *Id*.

In the final determination, Commerce changed its analysis of critical circumstances, and found instead that while critical circumstances existed with respect to Lvtong, critical circumstances did not exist with respect to Xiamen Dalle. *See* IDM at 4-7, 12-15. In the final determination, Commerce instead compared a six-month base period from January 2024 through June 2024 with a six-month comparison period of July 2024 through December 2024. *Id*. at 13.[1] This change in the base and comparison periods and change in Commerce's practice led to Xiamen Dalle's imports not meeting the 15 percent threshold needed to be considered massive. *See Id*.

This appeal followed.

## IV.    <u>STANDARD OF REVIEW</u>

The U.S. Court of International Trade ("CIT") reviews Commerce's decisions in antidumping duty proceedings to determine whether those decisions are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). It must be "more

---

[1]    Plaintiff contested Commerce's critical circumstances determination as it related to Xiamen Dalle in its ministerial error allegations. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Petitioner's Ministerial Error Allegations for the Final Determination* (June 30, 2025) at 2-4. Commerce dismissed Plaintiff's claims, stating that they did not constitute a ministerial error. *See* Memorandum from Gorden Struck, Int'l Trade Compliance Analyst, AD/CVD Operations, Off. II, to Scot Fullerton, Acting Deputy Assistant Sec'y for AD/CVD Operations, re: *Less-Than-Fair-Value Investigation of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Analysis of Ministerial Error Allegations* (July 23, 2025).

than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In determining whether Commerce's determination is supported by substantial evidence, the court, "reviews the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010), and determines "whether the evidence and reasonable inferences from the record support {the agency's} finding." *Daewoo Elecs. Co. v. Int'l Union of Elec. , Tech., Salaried & Mach. Workers, AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (internal quotation marks and citation omitted). Commerce must provide a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

A decision is not "in accordance with law" if it violates the plain language of a relevant statute or regulation. *AMS Assocs. Inc. v. United States*, 737 F.3d 1338, 1344 (Fed. Cir. 2013), *overruled on other grounds*, *Sunpreme Inc. v. United States*, 737 F.3d 1338 (Fed. Cir. 2020); *Jilin Henghe Pharm. Co. v. United States*, 342 F. Supp. 2d 1301, 1309 (Ct. Int'l Trade 2004), *vacated on other grounds*, 123 F. App'x 402 (Fed. Cir. 2005). Likewise, to the extent that the agency's determination is inconsistent with its past practice, the determination is not in accordance with law. *USEC Inc. v. United States*, 259 F. Supp. 2d 1310, 1326 (Ct. Int'l Trade 2003). "When an agency changes its practice, it is obligated to provide an adequate explanation for the change." *SKF USA Inc. v. United States*, 630 F.3d 1365, 1373 (Fed. Cir. 2011) (citing *Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983)).

## V.    SUMMARY OF ARGUMENT

Commerce's determination to include December 2024 import data—the month in which it began collecting countervailing duties on subject merchandise—in analyzing whether there had been massive imports for purposes of determining if critical circumstances existed is not supported

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

**Consol. Ct. No. 25-00202**                                                    NON-CONFIDENTIAL VERSION

by substantial evidence and is not in accordance with law. First, Commerce failed to follow its practice of excluding monthly import data from the month in which countervailing duties began to be collected for purposes of its critical circumstances analysis where the countervailing duty determination is published in the first half of that month. Second, Commerce's improper inclusion of December 2024 data in its comparison period without making any adjustments for the base period significantly distorts its critical circumstances analysis. Third, Commerce failed to provide a reasoned explanation for its determination to depart from its established practice. Finally, Commerce failed to evaluate imports of Xiamen Dalles LSPTVs as required by statute and regulation, and instead relied on Xiamen Dalle's reported [                                    ] to determine whether there were massive imports.

## VI.    ARGUMENT

### A.    Commerce's Negative Critical Circumstances with Respect to Xiamen Dalle is Not Supported by Substantial Evidence

This appeal rests on a fairly straightforward question—whether Commerce's determination to include Xiamen Dalle's December 2024 import data in its calculation of total imports during the comparison period for purposes of its critical circumstances analysis was unsupported by substantial evidence or otherwise not in accordance with law. If Commerce's determination is unsupported by substantial evidence, and the Court finds that the agency should have excluded the December 2024 import data, then it must compare the five-month February through June 2024 base period and the July to November 2024 comparison period for purposes of its critical circumstances analysis. As Xiamen Dalle's imports increased more than 15 percent between the five-month February through June 2024 base period and the July to November 2024 comparison period, they exceed the threshold necessary for Commerce to determine that critical circumstances existed for Xiamen Dalle. Commerce's determination is unsupported by substantial evidence for

10

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

**Consol. Ct. No. 25-00202**                                    NON-CONFIDENTIAL VERSION

multiple reasons. First, their determination of the cutoff for the comparison period departs from prior agency practice. Second, its inclusion of December 2024 data resulted in a distorted critical circumstances analysis. Third, Commerce failed to explain its reasons for departing from its established practice. Finally, in contravention of the statute and regulations, Commerce relied on [                ] instead of "import data" to determine whether critical circumstances existed with respect to Xiamen Dalle.

### 1. Commerce Departed from its Established Practice in Including December 2024 Data in its Critical Circumstances Analysis

As noted above, Commerce's practice is to rely on the longest period for which information is available from the month that the petition was filed through the date of the comparison period for purposes of making its critical circumstances determinations. That is, if Commerce has six months of data for the comparison period, it will typically compare a six-month base period with a six-month comparison period to determine if imports were massive. *Vertical Shaft Engines from China* IDM at 40. There are two important caveats to this practice, however. First, Commerce limits the comparison period by the month that it begins imposing preliminary duties in a companion countervailing duty investigation. *See* IDM at 6; *Pea Protein from China* IDM at 5; *CWP from China* IDM at cmt. 14. Second, where preliminary duties are imposed in the first half of a month, it is Commerce's practice to further limit the comparison period to the month prior to publication of the preliminary determination. *Quartz Surface Products from India* IDM at 4; *CWP from China* IDM at cmt. 14.

As Commerce explained in *Quartz Surface Products from India*:

> For this final determination, we continue to define the base period and comparison periods within the bounds of *Commerce's normal practice* by including May 2019 (the month in which the petition was filed) with the post-petition period and extending the comparison period up through the month prior to the Preliminary Determination (i.e., September 2019). *We have not included the month of the Preliminary Determination because the Preliminary Determination was published*

11

> *in the first half of the month (i.e., October 11, 2019).* As such, we compared a 5-month base period (December 2018 to April 2019) and comparison period (May 2019 to September 2019).

*Quartz Surface Products from India* IDM at 4 (emphasis added)

In antidumping duty investigations in which there is a companion countervailing duty investigation, Commerce applies this methodology and limits the comparison period for the antidumping duty investigation to the month in which preliminary duties went into effect and, when imposed in the first half of a month, the preceding month. *See CWP from China* IDM at cmt. 14. This methodology is reasonable and necessary because otherwise Commerce cannot conduct an apples-to-apples assessment of the base and comparison periods. This is because, without this adjustment, import volumes during the comparison period will be artificially deflated as they include a significant period of time during which preliminary countervailing duties were in effect.

For example, in the antidumping duty investigation of *CWP from China*, Commerce issued its preliminary determination in the companion countervailing duty investigation in the first half of the month (*i.e.*, November 13, 2007). *See CWP from China* IDM at cmt. 14; s*ee also Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 72 Fed. Reg. 63,875 (Dep't Commerce Nov. 13, 2007) (prelim. affirmative countervailing duty deter.; prelim. affirmative deter. of critical circumstances; and alignment of final countervailing duty deter. and final antidumping duty deter.) (*"CWP from China* CVD Prelim. Determination"). Accordingly, for purposes of its critical circumstances analysis in the antidumping duty investigation, Commerce limited the import data analyzed to the month prior to the preliminary countervailing duty determination, comparing a January 2007 through May 2007 base period to a June 2007 through October 2007 comparison period. *CWP from China* IDM at cmt. 14. As the agency explained,

> {Commerce} is continuing to define base and comparison periods within the bounds of its normal practice by . . . extending the comparison period up through the month prior to the preliminary determination in the CVD investigation of

> CWP . . . . *We have not included the month of the preliminary determination in the CVD investigation of CWP because the preliminary determination in the CVD investigation of CWP was published in the first half of the month.*

*CWP from China* IDM at cmt. 14 (emphasis added). Commerce further explained that including data from the month in which preliminary duties went into effect "would be distortive in the {antidumping} and {countervailing duty} critical circumstances analyses because it would reflect the impact of the preliminary duty rate on shipment volumes during the greater part of that month." *CWP from China* IDM at cmt. 14.

The same set of circumstances that arose in *CWP from China* are present in this case. Here, Commerce published its preliminary determination in the companion countervailing duty investigation in the first half of the month—December 6, 2024. *See Certain Low Speed Personal Transportation Vehicles From the People's Republic of China*, 89 Fed. Reg. 96,942 (Dep't Commerce Dec. 6, 2024) (prelim. affirmative countervailing duty deter., prelim. affirmative deter. of critical circumstances, in part, and alignment of final deter. with final antidumping duty deter.) ("*LSPTVs from China* Preliminary Determination"). Accordingly, pursuant to its practice as described in *CWP from China*, Commerce should not have excluded import data from December 2024 in its critical circumstances analysis. Including the month of December 2024 distorted Commerce's analysis because the preliminary countervailing duties that went into effect with publication of the preliminary countervailing duty determination naturally impacted shipment volumes for the remainder of the month. *See CWP from China* IDM at cmt. 14.

Indeed, the need to exclude the December 2024 data in this case was even greater than in *CWP from China*. Whereas the preliminary countervailing duty determination was published close to the second week of the month (November 13, 2007), *see CWP from China* CVD Prelim. Determination, 72 Fed. Reg. at 63,875, in this case, the preliminary countervailing determination was published far earlier in the month—December 6, 2024—leading to an even longer period in

13

BUSINESS PROPRIETARY INFORMATION HAS BEEN DELETED

which imports were distorted downward as a result of preliminary countervailing duties that went into effect as of that date. That is, Chinese imports were subject to CVD duties between 21.23% and 515.37% for 25 days in the month of December 2024. Furthermore, the results of the preliminary countervailing duty determination were released to interested parties in the prior month—on November 25, 2024—meaning that foreign producers and importers had advance notice that preliminary countervailing duties were to go into effect, resulting in likely even less subject imports entering the United States in December 2024, further distorting the data. *See* Issues and Decision Memorandum accompanying *LSPTVs from China* Preliminary Determination at 4 ("*LSPTVs from China* PDM").[2] This is particularly evident in this case, where, as explained in section 4 below, Commerce relied on Xiamen Dalle's [          ] which has significant potential for manipulation.

In sum, Commerce's final critical circumstances determination with respect to Xiamen Dalle is not in accordance with law because the agency failed to follow its established practice when determining the end of the comparison period where the companion countervailing duty final determination is published during the first half of the month. Commerce's established practice accounts for the natural behavior changes of importers and foreign producers responding to the potential for significant countervailing duty liability. Thus, Commerce's final negative critical circumstances determination is not in accordance with law.

### 2. Commerce's Inclusion of December 2024 Data Distorted its Critical Circumstances Analysis

Commerce's established practice of determining when the comparison period should end also comports with its practice for determining when the base period ends (and when the

---

[2]      While the record version of the *LSPTVs from China* PDM was released on ACCESS on December 3, 2024, it was initially made available to parties on November 26, 2024 but was later rejected from the record and refiled on December 3, 2024.

14

comparison period begins). Commerce's normal practice in determining whether or not to include the month in which the petition was filed in the base or comparison period depending on whether the petition was filed in the first half of the month or the second half of the month. *See, e.g.*, Preliminary Decision Memorandum accompanying *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Thailand*, 89 Fed. Reg. 96,214 (Dep't Commerce Dec. 4, 2024) (prelim. affirmative deter. of sales at less-than-fair-value, affirmative deter. of critical circumstances, postponement of final deter., and extension of provisional measures) at 21-22; Issues and Decision Memorandum accompanying *Oil Country Tubular Goods from Mexico*, 87 Fed. Reg. 59,041 (Dep't Commerce Sep. 29, 2022) (final affirmative deters. of sales at less than fair value and critical circumstances) at 3-4. When the petition is filed in the first half of the month, Commerce includes that month in the comparison period; where the petition is filed in the second half of the month, Commerce includes that month in the base period. *Id*.

This practice mirrors Commerce's normal practice of ending the comparison period depending on whether preliminary countervailing duties went into effect in the first half of the month. If duties go into effect in the first half of the month, Commerce will exclude that month from the comparison period; if duties go into effect in the second half of the month, Commerce will include that month in the comparison period. The rationale for the two practices is likewise the same—that is, import trends will naturally change based on whether a petition has been filed and whether preliminary duties have gone into effect. When a petition is filed, importers attempt to rush in additional imports prior to the imposition of duties—indeed this is the reason for which the critical circumstances practice exists. *See* Statement of Administrative Action accompanying the Uruguay Rounds Agreement Act, H.R. Rep. 103-316, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4204 ("Critical circumstances determinations focus on whether an order's effectiveness is

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

**Consol. Ct. No. 25-00202**                                    NON-CONFIDENTIAL VERSION

undermined by increasing shipments prior to the effective date of the order."). Conversely, when preliminary duties go into effect, importers decrease their imports due to the increased cost of importing.

Unsurprisingly then, entries often decrease substantially following the imposition of preliminary duties, and including import data for such periods in the comparison period would distort the analysis to determine whether a company had massive imports following the initiation of an antidumping or countervailing duty investigation in order to beat the duties. This is particularly pronounced when a preliminary determination is published in the first half of the month and, thus, preliminary duties go into effect in the first half of the month. This leaves at least a half month period in which subject importers are faced with increased import costs (*i.e.*, the duties), who typically decrease imports substantially in response. And here, the preliminary countervailing determination was published on December 6, 2024, meaning that duties applied to subject imports for nearly the entire month, significantly deflating the number of imports in this month.

Indeed, [                                                                                      ]. From March 2024 until November 2025, Xiamen Dalle reported [

].[3] *See* Xiamen Dalle Jan. 15 Q&V at Attachment I. Then, in December 2024, in which preliminary duties were imposed in the first half of the month, reported [

]. *Id.* Similarly, Lvtong's reported imports [

_____

[3]    As discussed below, Commerce's reliance on Xiamen Dalle's reporting [
], and not imports is itself not supported by substantial evidence and is otherwise contrary to law.

16

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

**Consol. Ct. No. 25-00202**                                    NON-CONFIDENTIAL VERSION

].[4] Thus, inclusion of the December 2024 data distorted Commerce's determination of whether there were "massive imports" during the comparison period, and this data should not have been considered.

### 3. Commerce Failed to Adequately Explain Its Departure from its Established Practice

In its final determination, Commerce failed to adequately explain why it departed from this practice and included the December 2024 import data in the comparison period for purposes of its critical circumstances analysis. *See* IDM at 12-15. In the preliminary determination, Commerce followed its practice of excluding from the comparison period data from the month in which preliminary duties were imposed in the first half of the month, PDM at 35-36, but then turned around and, without explanation, determined to do the opposite in its final determination. This sudden, unexplained changed to its practice cannot be supported by substantial evidence. Commerce provided *no explanation* at all as to why it changed its analysis from the preliminary determination and expanded the comparison period to include December 2024 data. Instead, Commerce's only statement regarding its selection of the base and comparison period related to the dates it selected as the end point of the base period and starting point for the comparison period. *See id.* at 13 & fn.61 (noting that where a petition was filed in the second half of the month, it was Commerce's practice to consider the month in which the petition was filed as the last month in the base period).

Commerce's departure from its past practice with respect to its critical circumstances analysis, particularly given its complete lack of explanation for departing from its prior practice renders its determination unsupported by substantial evidence. *See SKF USA Inc.*, 630 F.3d at

---

[4]    *See* Lvtong Jan. 15 Q&V and Lvtong Dec. 16 Q&V.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

1373; *USEC Inc.*, 259 F. Supp. 2d at 1326. In fact, following this determination, Commerce has continued to find that when a preliminary determination is filed in the first half of the month, it will exclude that month from the comparison period. *See* Issues and Decision Memorandum accompanying *Thermoformed Molded Fiber Products from the Socialist Republic of Vietnam*, 90 Fed. Reg. 46,805 (Dep't Commerce Sep. 30, 2025) (final affirmative countervailing duty deter. and final affirmative critical circumstances deter.) at 4 (citing to Issues and Decision Memorandum accompanying *Circular Welded Carbon Pipe from the People's Republic of China*, 73 Fed. Reg. 31,970 (Dep't Commerce June 5, 2008) at cmt. 12 ("Specifically, we have expanded the companion period to the month prior to the preliminary determination in the companion CVD investigation (since this determination was published in the first half of November 2007)").

### 4.    Commerce Improperly Relied on Non-Import Data to Determine Whether Critical Circumstances Existed With Respect to Xiamen Dalle

Finally, in determining whether Xiamen Dalle had massive imports during the comparison period, Commerce inappropriately relied on the quantity of LSPTVs [

], instead of based on imports. Pursuant to 19 U.S.C. § 1673d(a)(3) in order to find that critical circumstances exist, Commerce is directed to determine whether "there have been massive *imports* of the subject merchandise over a relatively short period." *Id*. § 1673d(a)(3)(B) (emphasis added). Likewise, Commerce's regulations require that in order to find "massive imports," imports during the comparison period must have increased by at least 15 percent over the imports in the base period. 19 C.F.R. § 351.206(h)(2). In other words, both the statute and regulations require that critical circumstances determinations be made on the basis of whether *imports* increased by at least 15 percent. The plain language of the statute thus prohibits Commerce from making this determination on the basis [          ], which are

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

entirely controlled by the respondent and does not measure when the product actually entered the United States.

Xiamen Dalle, however, [

]. *See, e.g.*, Xiamen Dalle Nov. 5 Q&V at Attachment I ("[

].""); Xiamen Dalle Nov. 15 Q&V at Attachment I (same); Xiamen Dalle Dec. 16 Q&V at Attachment I (same); Xiamen Dalle Jan. 15 Q&V at Attachment I (same). Accordingly, Commerce should not have relied on this data in order to determine if massive *imports* existed. Indeed, Commerce did not even address the fact that Xiamen Dalle failed to correctly report its quantity and values based on total imports made each month, stating that "with respect to Xiamen Dalle, we find that imports . . . did not increase by 15 percent or more" from the base to the comparison period. IDM at 13. In particular, Commerce should not have relied on [            ] instead of imports given that Xiamen Dalle [

].[5] However, given that Xiamen Dalle reported its monthly [      ], and not imports, Commerce did not—and could not have—determined whether Xiamen Dalle's imports increased.

For these reasons, Commerce's negative critical circumstances determination with respect to Xiamen Dalle is unsupported by substantial evidence and, accordingly, Plaintiff respectfully requests that the Court remand Commerce's determination for further consideration.

---

[5]    *See* Letter from Clark Hill PLLC to Sec'y Commerce, re: *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Response to Section A of the Initial Questionnaire* (Oct. 3, 2024) at 1, C.R. 205, P.R. 266.

## VII.    CONCLUSION

For the reasons described above, the Alliance urges this Court to remand Commerce's negative critical circumstances determination for reconsideration in accordance with the Court's opinion.

Respectfully submitted:

*/s/ Robert E. DeFrancesco, III*
Robert E. DeFrancesco III, Esq.
Derick G. Holt, Esq.
Theodore P. Brackemyre, Esq.
Stephen A. Morrison, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Personal Transportation Vehicle Manufacturers Coalition*

Dated: April 13, 2026

CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that these comments comply with the word limitation requirement. The word count for the Memorandum of Points and Authorities in Support of Consolidated Plaintiff the American Personal Transportation Vehicle Manufacturers Coalition's Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 6,066 words.

*/s/ Robert E. DeFrancesco, III*
(Signature of Attorney)

Robert E. DeFrancesco, III
(Name of Attorney)

The American Personal Transportation Vehicle Manufacturers Coalition
(Representative Of)

April 13, 2026
(Date)