**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

KANGDI ELECTRIC VEHICLE (HAINAN) CO., LTD. *et al.*,

Plaintiffs,

and

THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,

Consolidated Plaintiff,

v.

UNITED STATES,

Defendant.

and

THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,

Defendant-Intervenor,

and

XIAMEN DALLE NEW ENERGY AUTOMOBILE CO., LTD.,

Defendant-Intervenor.

Consol. Court No. 25-00202
**PUBLIC VERSION**
**Proprietary Information Removed Between Brackets [ ]**

**DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO CONSOLIDATED PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Jing Zhang
Ryan R. Migeed
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3385
*Counsel to Xiamen Dalle New Energy Automobile Co., Ltd.*

Dated: October 26, 2026

# TABLE OF CONTENTS


I. STATEMENT PURSUANT TO USCIT RULE 56.2 ........ 2

A. Administrative Determination Under Review ........ 2

B. Issues Presented for Review ........ 2

II. STATEMENT OF FACTS ........ 2

III. STANDARD OF REVIEW ........ 6

IV. SUMMARY OF ARGUMENT ........ 7

V. ARGUMENT ........ 8

A. Commerce's Negative Critical Circumstances Determination for Xiamen Dalle Was Supported by Substantial Evidence and Otherwise in Accordance with Law ........ 8

1. Legal Framework ........ 9

2. Commerce Did Not Depart from Established Practice in Setting the Base and Comparison Periods, and the Inclusion of December 2024 Data Was Not Distortive ........ 10

B. The Coalition Has Failed to Exhaust Its Administrative Remedies and Otherwise Waived the Argument that Commerce Improperly Relied on Xiamen Dalle's Q&V Data ........ 22

VI. CONCLUSION ........ 26

# TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Committee v. United States*, 828 F. Supp. 2d 1345 (Ct. Int'l Trade 2012) ........ 7, 21

*Ancientree Cabinet Co. v. United States*, 565 F. Supp. 3d 1373 (Ct. Int'l Trade 2022)........ 16

*Apex Frozen Foods Priv. Ltd. v. United States*, 862 F.3d 1337 (Fed. Cir. 2017)........ 19

*Committee Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States*, Ct. No. 19-00122, Slip Op. 26-77 (Ct. Int'l Trade July 21, 2026)........ 7, 22, 23, 24

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966)........ 7, 21

*Hartford Fire Ins. Co. v. United States*, 507 F. Supp. 2d 1331 (Ct. Int'l Trade 2007)........ 22, 23

*Jiaxing Bro. Fastener Co. v. United States*, 822 F.3d 1289 (Fed. Cir. 2016)........ 18, 25

*Jinko Solar Co. v. United States*, 229 F. Supp. 3d 1333 (Ct. Int'l Trade 2017)........ 18

*Negev Phosphates, Ltd. v. United States*, 699 F. Supp. 938 (Ct. Int'l Trade 1988)........ 20

*SeAH Steel VINA Corp. v. United States*, 950 F.3d 833 (Fed. Cir. 2020)........ 21

*Siemens Energy, Inc. v. United States*, 992 F. Supp. 2d 1315 (Ct. Int'l Trade 2014)........ 21

*Tianjin Magnesium Int'l Co. v. United States*, 823 F. Supp. 3d 1350 (Ct. Int'l Trade 2026) 19, 21

*U.S. Steel Corp. v. United States*, 348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018)........ 16, 17, 23

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951)........ 6

*Usinor Sacilor v. United States*, 893 F. Supp. 1112 (Ct. Int'l Trade 1995)........ 7, 21

**TABLE OF AUTHORITIES (cont.)**

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ........ 6

19 U.S.C. § 1673b(e)(1)(B) ........ 5

19 U.S.C. § 1673d(a)(3) ........ 9, 25

28 U.S.C. § 2637(d) ........ 22

**Administrative Decisions**

*Aluminum Extrusions From the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 38075 (Dep't of Com. May 7, 2024) ........ 15

*Certain Epoxy Resins From South Korea: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 90 Fed. Reg. 14623 (Dep't of Com. Apr. 3, 2025) ........ 13

*Certain Epoxy Resins From the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Critical Circumstances Determination, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 89605 (Dep't of Com. Nov. 13, 2024) ........ 13

*Certain Epoxy Resins From the Republic of Korea: Preliminary Negative Countervailing Duty Determination, Preliminary Negative Critical Circumstances Determination and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 74912 (Dep't of Com. Sep. 13, 2024) ........ 14

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 26530 (Dep't of Com. June 23, 2025) ........ 2, 5

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 89 Fed. Reg. 57865 (Dep't of Com. July 16, 2024) ........ 3

**TABLE OF AUTHORITIES (cont.)**

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Determination of Sale at Less-Than-Fair-Value Investigation, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination and Extension of Provisional Measures*, 90 Fed. Reg. 8517 (Dep't of Com. Jan. 30, 2025) .......... 4

*Certain Paper Shopping Bags From India: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination, in Part*, 89 Fed. Reg. 45834 (Dep't of Com. May 24, 2024) .......... 14

*Certain Paper Shopping Bags From India: Preliminary Affirmative Determination of Countervailable Subsidies, Preliminary Affirmative Determination of Critical Circumstances in Part, and Alignment of Final Determination With the Final Antidumping Duty Determination*, 88 Fed. Reg. 76185 (Dep't of Com. Nov. 6, 2023) .......... 14

*Ferrosilicon From Malaysia: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 14075 (Dep't of Com. Mar. 28, 2025) .......... 15

*Ferrosilicon From Malaysia: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 73364 (Dep't of Com. Sep. 10, 2024) .......... 15

*Gas Powered Pressure Washers From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination, in Part*, 88 Fed. Reg. 88578 (Dep't of Com. Dec. 22, 2023) .......... 13

*Gas Powered Pressure Washers From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 88 Fed. Reg. 36531 (Dep't of Com. June 5, 2023) .......... 10, 12

*Gas Powered Pressure Washers From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less-Than-Fair-Value, Preliminary Affirmative Critical Circumstances Determination, in Part, Postponement of Final Determination, and Extension of Provisional Measures*, 88 Fed. Reg. 51279 (Dep't of Com. Aug. 3, 2023) .......... 12

## TABLE OF AUTHORITIES (cont.)

**Regulations**

19 C.F.R. § 351.206(h) .................................................................................................. 5

19 C.F.R. § 351.206(h)(1)(i)-(iii)................................................................................ 9, 25

19 C.F.R. § 351.301(c)(v) ............................................................................................ 22

# INTRODUCTION

Defendant-Intervenor Xiamen Dalle New Energy Automobile Co., Ltd. ("Defendant-Intervenor" or "Xiamen Dalle") respectfully submits this response to Consolidated Plaintiff the American Personal Transportation Vehicle Manufacturers Coalition's ("Consolidated Plaintiff" or "the Coalition") Rule 56.2 Motion for Judgment on the Agency Record, ECF No. 31 ("Coalition Br.").

The Coalition's brief rests entirely on the premise that the U.S. Department of Commerce ("Commerce") was required to exclude Xiamen Dalle's December 2024 data from the comparison period of its critical circumstances analysis. That argument is flawed in two ways. First, Commerce's inclusion of December 2024 quantity and value ("Q&V") data was consistent with its established practice of basing the critical circumstances analysis on the longest period of available data up through the month of the relevant antidumping ("AD") or countervailing duty ("CVD") preliminary determination. The agency's decision followed a discernible path, is supported by substantial evidence, and was made within agency discretion. Second, the Coalition waived its argument that Commerce improperly relied on what it calls "non-import" data by failing to raise this argument before the agency. That argument is also at odds with Commerce's broad discretion to determine what data it considers to be the most accurate in determining the quantity and value of a respondent's imports of subject merchandise.

For the reasons below, and for the reasons set forth in the relevant portions of the United States' response brief, which Xiamen Dalle hereby incorporates by reference, Xiamen Dalle respectfully requests that the Court deny the Coalition's Rule 56.2 Motion for

Judgment on the Agency Record with respect to Xiamen Dalle in its entirety and sustain the *Final Determination* with respect to the company.

## I. STATEMENT PURSUANT TO USCIT RULE 56.2

### A. Administrative Determination Under Review

Consolidated Plaintiff challenges Commerce's negative critical circumstances determination with respect to Xiamen Dalle in the antidumping duty investigation of *Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China*. The final determination was published as *Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 26530 (Dep't of Com. June 23, 2025), P.R. 699 ("*Final Determination*"), and accompanying Issues and Decision Mem., P.R. 692 ("IDM").

### B. Issues Presented for Review

1. Whether Commerce's critical circumstances determination for Xiamen Dalle, including the use of the company's December 2024 subject import shipment data in that determination, was supported by substantial evidence and in accordance with law.

2. Whether Consolidated Plaintiff failed to exhaust its administrative remedies and otherwise waived its argument that Commerce's critical circumstances analysis improperly relied on "non-import" data by failing to raise this argument before the agency.

## II. STATEMENT OF FACTS

On July 16, 2024, Commerce initiated a less-than-fair-value investigation of low-speed personal transportation vehicles ("LSPTV") from China based on a petition filed by the Coalition. *See* Petitioner's Letter re: *Petition for the Imposition of Antidumping and*

*Countervailing Duties* (June 20, 2024), P.R. 2, C.R. 2; *Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 89 Fed. Reg. 57865 (Dep't of Com. July 16, 2024), P.R. 50.

On August 23, 2024, Commerce selected Guangdong Lvtong New Energy Electric Vehicle Technology Co., Ltd. ("Guangdong Lvtong") and Xiamen Dalle as the mandatory respondents in the investigation. *See* Mem. from Jerry Xiao, Int'l Trade Compliance Analyst, Office II, AD/CVD Operations, to Scot Fullerton, Acting Deputy Ass't Sec'y, AD/CVD Operations, re: *Respondent Selection* (Aug. 23, 2024), P.R. 229, C.R. 196.

During the course of the investigation, on October 22, 2024, the Coalition alleged that critical circumstances existed, claiming that imports of LSPTVs from China had surged over a short period. *See generally* Letter from Robert E. DeFrancesco, III, Esq., Wiley Rein LLP, to the U.S. Dep't of Com. re: *Critical Circumstances Allegations* (Oct. 22, 2024), P.R. 298. Commerce then requested Q&V shipment data from Guangdong Lvtong and Xiamen Dalle, "beginning with July 2023 through the last day of the month of the publication of the preliminary determination of this investigation." Letter from Christopher Hargett, Program Manager, Office II, AD/CVD Operations, to Xiamen Dalle, c/o Mark Ludwikowski, Clark Hill PLC, re: *Request for Monthly Quantity and Value Shipment Data* at 1 (Oct. 23, 2024), P.R. 297 ("Xiamen Dalle Critical Circumstances Q&V Questionnaire"); *see also* Letter from Christopher Hargett, Program Manager, Office II, AD/CVD Operations, to Guangdong Lvtong, c/o Dharmendra N. Choudhary, Grunfeld Desiderio Lebowitz Silverman Klestadt, LLP, re: *Request for Monthly Quantity and Value Shipment Data* at 1 (Oct. 29, 2024), P.R. 312 ("Guangdong Lvtong Critical Circumstances Q&V Questionnaire").

Both Guangdong Lvtong and Xiamen Dalle timely filed their Q&V data. *See Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Preliminary Affirmative Determination of Sale at Less-Than-Fair-Value Investigation, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination and Extension of Provisional Measures*, 90 Fed. Reg. 8517 (Dep't of Com. Jan. 30, 2025), P.R. 590 ("*Preliminary Determination*"), and accompanying Prelim. Decision Mem. at 2, P.R. 575 ("PDM"). The Coalition did not file comments alleging deficiencies in either Commerce's original Q&V questionnaire or the respondents' responses to that questionnaire, nor did it otherwise request that the agency collect different types of data for its critical circumstances analysis.

On January 30, 2025, Commerce made preliminary affirmative determinations of critical circumstances for Guangdong Lvtong, Xiamen Dalle, the separate rate respondents, and the China-wide entity. *See generally Preliminary Determination*, P.R. 590, and PDM, P.R. 575; *see also* Mem. from Gorden Struck, Int'l Trade Compliance Analyst, Office II, AD/CVD Operations, to The File, re: *Preliminary Analysis of Critical Circumstances* (Jan. 23, 2025), P.R. 578, C.R. 608. Commerce found that the preliminary dumping margins for the mandatory and separate rate respondents were high enough that importers knew or should have known that the merchandise was being sold at less than fair value, and that the International Trade Commission's preliminary finding of a reasonable indication of material injury showed that importers knew or should have known that imports of LSPTVs were likely to injure the domestic industry materially. PDM at 34, P.R. 575.

As part of its preliminary critical circumstances analysis, Commerce compared each mandatory respondent's shipments during the base period, February 2024 through June 2024,

with its shipments during the comparison period, July 2024 through November 2024. *Id.* at 35-36, P.R. 575. Commerce found that each respondent's volume increased by more than 15 percent, and therefore preliminarily determined that imports had been "massive . . . over a relatively short period," following its regulatory test for finding critical circumstances under the Tariff Act of 1930, *as amended* (the "Act"). *See id.*; *see also* 19 U.S.C. § 1673b(e)(1)(B); 19 C.F.R. § 351.206(h).

Following the *Preliminary Determination*, the parties filed administrative case briefs. Although Commerce had used five-month base and comparison periods for its preliminary critical circumstances determination, *see* PDM at 35, P.R. 575, separate rate respondents Kangdi Electric Vehicle (Hainan) Co., Ltd., and SC Autosports, LLC (collectively, "Kangdi") and Xiamen Dalle argued that Commerce should use six-month base and comparison periods consistent with its established practice. *See* Letter from Michelle Li, Thompson Hine LLP, to the U.S. Dep't of Com., re: *Case Brief of Kangdi Electric Vehicle (Hainan)* Co., Ltd. at 4-5 (May 14, 2025), P.R. 659, C.R. 663 ("Kangdi Case Br."); *see also* Letter from Mark R. Ludwikowski, Clark Hill, PLC, to the U.S. Dep't of Com., re: *Case Brief* at 19 (May 14, 2025), P.R. 660, C.R. 664 ("Xiamen Dalle Case Br."). Commerce issued the *Final Determination* on June 23, 2025, again finding critical circumstances for Guangdong Lvtong and the separate rate respondents. *See generally Final Determination*, P.R. 699, and IDM at 4, P.R. 692. As to Xiamen Dalle, however, Commerce found that critical circumstances did not exist. IDM at 4, P.R. 692.

Commerce explained that its preliminary analysis had used five-month base and comparison periods, but that, for the *Final Determination*, it followed its practice of using all available data. IDM at 13, P.R. 692. Accordingly, the comparison period began with the month following the filing of the petition (July 2024) and ended with the month in which Commerce

first imposed preliminary duties in the companion CVD investigation (December 2024), a six-month period. *Id*. at 5-6, 13, P.R. 692. The base period was of equal length, running from January 2024 through June 2024, the month in which the petition was filed. *Id.* at 13, P.R. 692. Xiamen Dalle's import volume did not increase by more than 15 percent, and Commerce therefore found that its imports were not massive. *Id.*, P.R. 692.

After the *Final Determination*, the Coalition filed ministerial error allegations in which it asserted that Commerce had inadvertently added an extra month to the base and comparison periods in its critical circumstances determination. Letter from Robert E. DeFrancesco, III, Esq., to U.S. Dep't of Com., re: *Petitioner's Ministerial Error Allegation for the Final Determination* at 2-4 (June 30, 2025), P.R. 705, C.R. 684. Commerce disagreed, explaining that no ministerial error had occurred because the extension of both periods to six months was intentional. Mem. from Gorden Struck, Int'l Trade Compliance Analyst, Office II, AD/CVD Operations, to Scot Fullerton, Acting Deputy Ass't Sec'y, AD/CVD Operations, re: *Analysis of Ministerial Error Allegations* at 3 (July 23, 2025), P.R. 707.

## III. <u>STANDARD OF REVIEW</u>

Xiamen Dalle agrees with the Government's statement of the standard of review, and only briefly supplements the Government's argument on this point. Def.'s Resp. to Pls.' Mots. for J. on the Agency Record at 7-8, ECF No. 36 (Sep. 2, 2026) ("Government Br."). This Court must uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (citation and quotation marks omitted). That plaintiff may raise the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's

finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).

Commerce retains the discretion as the finder of fact to "place greater or less weight on the evidence presented to it," and determine which evidence is the most persuasive in making its determination. *See Usinor Sacilor v. United States*, 893 F. Supp. 1112, 1123 (Ct. Int'l Trade 1995). The Court may not reweigh the facts on the record, and should uphold the agency's determination even where it might find Commerce's argument "unpersuasive" so long as that determination is reasonable and based on substantial evidence. *Ad Hoc Shrimp Trade Action Committee v. United States*, 828 F. Supp. 2d 1345, 1354-55 (Ct. Int'l Trade 2012).

## IV. SUMMARY OF ARGUMENT

First, Commerce's critical circumstances final determination with respect to Xiamen Dalle was supported by substantial evidence, consistent with its past practice in critical circumstances determinations, and made within the discretion afforded to the agency by law. Commerce's inclusion of December 2024 subject import shipment data in the comparison period was consistent with its long-established practice of basing the critical circumstances analysis on the longest period of available data up through the month of the relevant AD or CVD preliminary determination. The Coalition cannot show that Commerce has a contrary practice, as the Coalition claims it does, let alone that Commerce failed to explain a departure from that purported practice. Commerce's determination to set the comparison period as it did in this case was also reasonably discernible, based on the arguments that were raised before the agency and Commerce's analysis of these arguments in the *Final Determination*. Commerce clearly balanced different considerations, including the available data on the record and parties' arguments on the issue. In contrast, the Coalition's claim that including

December 2024 in the comparison period distorts Commerce's critical circumstances analysis is without merit, as it failed to raise any meaningful argument against Commerce's above-mentioned practice in selecting the **end** of the comparison period and relies on its own misguided interpretation of record evidence.

Second, the Coalition failed to exhaust its administrative remedies and otherwise waived its argument that Commerce improperly relied on what it calls "non-import" data by failing to raise this argument before the agency. The Coalition makes this claim without having commented on either Commerce's original Q&V questionnaire issued to the respondents or their responses to that questionnaire. The Coalition's argument ignores Commerce's longstanding practice of relying on the same type of data in making its critical circumstances determinations, and is also at odds with Commerce's broad discretion to determine what data it considers to be the most accurate in determining the quantity and value of a respondent's imports of subject merchandise.

## V. ARGUMENT

### A. Commerce's Negative Critical Circumstances Determination for Xiamen Dalle Was Supported by Substantial Evidence and Otherwise in Accordance with Law

In this case, following its established practice, Commerce used all available data (six months for the base period and six months for the comparison period) on the record to assess subject import trends and make its final critical circumstances determination with respect to Xiamen Dalle and the other respondents. Commerce's selection of base and comparison periods is supported by substantial evidence in the record and made within agency discretion. Because Xiamen Dalle's imports during the comparison period did not increase above the 15 percent threshold as compared to the base period, Commerce reasonably determined that the company

did not make "massive imports" over a "relatively short period" and thus critical circumstances did not exist with respect to Xiamen Dalle. 19 U.S.C. § 1673d(a)(3).

**1. Legal Framework**

Section 735 of the Act provides that in an investigation where a party has alleged that critical circumstances exist, Commerce shall also determine whether (A) "there is a history of dumping and material injury by reason of dumped imports in the United States," or that the importer "knew or should have known that the exporter was selling the subject merchandise at less than its fair value and that there would be material injury by reason of such sales," and (B) "there have been massive imports of the subject merchandise over a relatively short period." 19 U.S.C. § 1673d(a)(3).

To determine whether there were "massive" imports of subject merchandise, Commerce has consistently applied a regulatory test that considers the volume and value of imports, seasonal trends, and the share of domestic consumption accounted for by the examined imports. *See* 19 C.F.R. § 351.206(h)(1)(i)-(iii). Commerce generally considers imports to be massive if they increase by at least 15 percent during a "relatively short period." *See* IDM at 4, P.R. 692. Commerce uses base and comparison periods as the "relatively short period," comparing the quantity of imports in the base period to the quantity of imports in the comparison period. *See id.*; *see also* section V.A.2 *infra* (citing prior Commerce determinations); Government Br. at 9 (citing additional prior Commerce determinations).

In this regard, it is Commerce's practice to base the "massive imports" analysis on all available data, using base and comparison periods of no less than three months. Further, Commerce's practice is to limit the comparison period by the month that Commerce began suspension of liquidation resulting from an affirmative preliminary determination. Meanwhile,

when there is a companion CVD investigation, Commerce may limit the duration of the comparison period in an AD investigation by the month that it began imposing preliminary countervailing duties on subject imports. Most importantly, irrespective of whether Commerce limits the comparison period by an AD or CVD preliminary determination, it typically includes in the comparison period the import data for the month of publication of the relevant preliminary determination, even if it is published in the first half of the month. *See, e.g.*, *Gas Powered Pressure Washers From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 88 Fed. Reg. 36531 (Dep't of Com. June 5, 2023) ("*GPPW from China Prelim. CVD Determ.*"); Mem. from Ted Pearson, Int'l Trade Compliance Analyst, to The File, re: *Analysis of Critical Circumstances* at 1 (Dec. 18, 2023), ACCESS Bar. No. 4480070-01 (Inv. No. C-570-149) ("*GPPW from China CVD Final Critical Circumstances Mem.*") ("For this final determination, we have revised our analysis to include all months for which data are available. Specifically, we have analyzed the combined shipment data for the period July 2022 through June 2023 submitted by the mandatory respondent, JD Power."). This practice is consistent with Commerce's stated practice of using "all available data" in making its critical circumstances determinations. *See* IDM at 5, P.R. 692.

### 2. Commerce Did Not Depart from Established Practice in Setting the Base and Comparison Periods, and the Inclusion of December 2024 Data Was Not Distortive

Commerce appropriately relied on six-month base and comparison periods, including December 2024—the month in which it began imposing preliminary duties in the companion CVD investigation—and the Coalition cannot establish that Commerce departed from past

practice in doing so, or that the inclusion of the December 2024 data distorted Commerce's critical circumstances analysis.

As explained by the Government, when Commerce is conducting a parallel CVD investigation, the agency, in examining whether critical circumstances exist in the AD investigation, may decide to limit the comparison period by the month in which it imposes preliminary countervailing duties. Commerce has also noted that its stated practice is to incorporate all available data. *See* IDM at 5–6, P.R. 692. In this case, Commerce began collecting preliminary duties in accordance with the preliminary determination in the companion CVD investigation in December 2024. *Id.* at 13, P.R. 692. Accordingly, Commerce set December 2024 as the end month for the comparison period, including for Xiamen Dalle. *Id.* at 5-6, 13, P.R. 692. Commerce's decision was supported by the record, consistent with its past practice, and made within the discretion afforded to the agency by law. Xiamen Dalle hereby incorporates by reference the Government's arguments in support of Commerce's decision on pages 10–15 of the Government's response brief, and supplements them as follows.

In this case, Commerce followed, rather than departed from, its normal practice in selecting six-month base and comparison periods for all respondents, including Xiamen Dalle. Commerce reasoned in the *Final Determination*:

> It is Commerce's practice to base the critical circumstances analysis on all available data, using base and comparison periods of no less than three months. Further, Commerce's practice is to limit the comparison period by the month that Commerce began suspension of liquidation resulting from an affirmative preliminary determination. However, when, as is the case here, there is a companion CVD investigation, we limit the duration of the comparison period by the month that Commerce began imposing preliminary countervailing duties on subject imports. The companion CVD investigation published its affirmative preliminary determination in December 2024. Accordingly, we are continuing to define base and comparison periods within the bounds of our normal practice by extending the comparison period up through the month of the *LSPTVs CVD Preliminary Determination*. For this final determination, we are comparing

> shipments over a period beginning in January 2024 through June 2024 with the period July 2024 through December 2024. . . .

IDM at 5–6, P.R. 692; *see also id*. at 13, P.R. 692. The agency correctly stated and applied its practice of basing the final critical circumstances analysis on all available data up through the month of the relevant AD or CVD preliminary determination (as applicable), even if such preliminary determination is published in the first half of the month. Indeed, an abundance of agency precedents demonstrates this practice.

For example, in *Gas Powered Pressure Washers From China*, where the CVD preliminary determination was published on June 5, 2023, Commerce nonetheless included the month of June in the comparison period of its AD preliminary critical circumstances determination.[1] *GPPW from China Prelim. CVD Determ.*; *Gas Powered Pressure Washers From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less-Than-Fair-Value, Preliminary Affirmative Critical Circumstances Determination, in Part, Postponement of Final Determination, and Extension of Provisional Measures*, 88 Fed. Reg. 51279 (Dep't of Com. Aug. 3, 2023), and accompanying Prelim. Decision Mem. at 8 (July 28, 2023), ACCESS Bar. No. 4409881-02 (Inv. No. A-570-148). For the CVD final critical circumstances determination, Commerce once again followed its practice to "examine the longest period for which information is available up to the date of the preliminary determination," expanding the comparison period to cover the month of publication of the CVD preliminary determination, *i.e.*, June 2023. *Gas Powered Pressure Washers From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative*

[1] For the AD final determination, Commerce did not conduct an independent critical circumstances analysis because the mandatory respondent withdrew participation and received adverse facts available. *See* Mem. from Hermes Pinilla, Sr. Int'l Trade Compliance Analyst, to The File, re: *Analysis of Critical Circumstances* (Dec. 18, 2023), ACCESS Bar. No. 4480350-01 (Inv. No. A-570-148).

*Critical Circumstances Determination, in Part*, 88 Fed. Reg. 88578 (Dep't of Com. Dec. 22, 2023), and accompanying Issues and Decision Mem. at 3 (Dec. 18, 2023), ACCESS Bar. No. 4480066-02 (Inv. No. C-570-149); *see also GPPW from China CVD Final Critical Circumstances Mem.* at 1 ("For this final determination, we have revised our analysis to include all months for which data are available. Specifically, we have analyzed the combined shipment data for the period July 2022 through June 2023 submitted by the mandatory respondent, JD Power.").

Similarly, in *Certain Epoxy Resins From the Republic of Korea*, for the AD final critical circumstances determination, Commerce selected a comparison period that included the month of publication of the AD preliminary determination, despite the fact that it was published in the first half of the month (*i.e.*, November 13). *Certain Epoxy Resins From the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Critical Circumstances Determination, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 89605 (Dep't of Com. Nov. 13, 2024), and accompanying Prelim. Decision Mem. at 21-22 (Nov. 6, 2024), ACCESS Bar. No. 4662709-02 (Inv. No. A-580-919) ("*Epoxy Resins from Korea* PDM"); *Certain Epoxy Resins From South Korea: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 90 Fed. Reg. 14623 (Dep't of Com. Apr. 3, 2025), and accompanying Issues and Decision Mem. at 4 (Mar. 28, 2025), ACCESS Bar. No. 4740347-02 (Inv. No. A-580-919) ("Specifically, we analyzed the shipment data provided by {mandatory respondents} for the period August 2023 through the month of the preliminary determination (i.e., November 2024)."). Likewise, for the final CVD critical circumstances determination, Commerce also selected a comparison period that included the month of September 2024, despite the fact that the

CVD preliminary determination was published in the first half of that month (*i.e.*, September 13). *See Certain Epoxy Resins From the Republic of Korea: Preliminary Negative Countervailing Duty Determination, Preliminary Negative Critical Circumstances Determination and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 74912 (Dep't of Com. Sep. 13, 2024); Mem. from Thomas Martin, Int'l Trade Analyst, to The File, re: *Final Critical Circumstances Analysis* (Mar. 28, 2025), ACCESS Bar. No. 4740917-01 (Inv. No. C-580-920).

This practice is consistent with—and indeed, complements—Commerce's stated practice of using "all available data" in making its critical circumstances determinations. *See* IDM at 5, P.R. 692. In *Certain Paper Shopping Bags From India*, the CVD preliminary determination was published on November 6, 2023. *See Certain Paper Shopping Bags From India: Preliminary Affirmative Determination of Countervailable Subsidies, Preliminary Affirmative Determination of Critical Circumstances in Part, and Alignment of Final Determination With the Final Antidumping Duty Determination*, 88 Fed. Reg. 76185 (Dep't of Com. Nov. 6, 2023). In the CVD final critical circumstances determination, Commerce included November 2023 in the comparison period and stated that the comparison period was explicitly expanded to include the "additional months of shipment data that were available following the issuance of the *Preliminary Determination*," including the month of its publication. *Certain Paper Shopping Bags From India: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination, in Part*, 89 Fed. Reg. 45834 (Dep't of Com. May 24, 2024), and accompanying Issues and Decision Mem. at 4 (May 17, 2024), ACCESS Bar. No. 4562203-02 (Inv. No. C-533-918).

In *Ferrosilicon From Malaysia*, Commerce once again reiterated this practice. There, too, the CVD preliminary determination was published in the first half of the month, on September 10, 2024. *See Ferrosilicon From Malaysia: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 73364 (Dep't of Com. Sep. 10, 2024). In the CVD final critical circumstances determination, Commerce expanded the base and comparison periods, with the latter covering the month of September 2024, "in light of additional quantity and value information placed on the record by respondents following the preliminary determination." *Ferrosilicon From Malaysia: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 14075 (Dep't of Com. Mar. 28, 2025), and accompanying Issues and Decision Mem. at 3 (Mar. 21, 2025), ACCESS Bar. No. 4735972-02 (Inv. No. C-557-829) ("*Ferrosilicon from Malaysia* IDM"). As Commerce explained in this IDM, it did so "consistent with Commerce's standard practice, {which} examine{s} the longest period for which information is available up to the date of the preliminary determination in analyzing whether critical circumstances exist with respect to {the foreign} producers/exporters." *Id.* (internal quotation marks omitted) (emphasis added).

Also, in *Aluminum Extrusions From Vietnam*,[2] the AD preliminary determination was published on May 7, 2024. *See Aluminum Extrusions From the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 38075 (Dep't of Com. May 7, 2024). For the final AD critical circumstances determination, Commerce included the month

[2] There was no companion CVD investigation in this case.

of publication of the preliminary determination, despite it being published in the first half of the month. There, Commerce stated its practice broadly: "Commerce's practice is to limit the comparison period by the month that Commerce began suspension of liquidation resulting from an affirmative preliminary determination." Mem. from Minoo Hatten, Director, Office II, AD/CVD Operations, to Scot Fullerton, Acting Deputy Ass't Sec'y for AD/CVD Operations, re: *Analysis of Ministerial Error Allegation* at 5 (Oct. 22, 2024), ACCESS Bar. No. 4653772-02 (Inv. No. A-552-837). Applying this practice to the instant case, Commerce further explained that "{b}ecause {it} began suspension of liquidation of subject merchandise on May 7, 2024, {it had} limited {the} comparison period to this month," and therefore "compared the total volume of shipments during the period February 2023 through September 2023 (*i.e.*, the base period) with the total volume of shipments during the period of October 2023 through **May** 2024 (*i.e.*, the comparison period)" for the mandatory respondent in that case. *Id.* (emphasis added).

The Coalition claims that Commerce has an established practice of ending the comparison period in the month *prior* to the publication of the preliminary determination in the companion CVD investigation if the preliminary determination is issued in the first half of the month. *See* Coalition Br. at 11. This argument is without merit.

An agency practice is established "when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to the agency's past action." *U.S. Steel Corp. v. United States*, 348 F. Supp. 3d 1248, 1254 (Ct. Int'l Trade 2018) (internal citation and quotation marks omitted); *see also Ancientree Cabinet Co. v. United States*, 565 F. Supp. 3d 1373, 1381 (Ct. Int'l Trade 2022) (finding "insufficient evidence" of an established practice for the calculation of surrogate financial ratios where plaintiff raised only one example of Commerce using its proposed calculation method while

multiple other prior Commerce determinations on the record supported what Commerce had done in that case).

The Coalition relies on two prior Commerce determinations, one from 2007 and one from 2019, to support its claim that Commerce "departed from its established practice" without an adequate explanation here. *See* Coalition Br. at 11-13. But two administrative determinations 12 years apart do not meet the definition of "established practice." *See U.S. Steel*, 348 F. Supp. 3d at 1254 ("two prior determinations are not enough to constitute an agency practice that is binding on Commerce.") (internal citation omitted). Rather, in light of the Commerce determinations cited above, the overwhelming weight of Commerce's precedents clearly demonstrates an agency practice to the contrary. Thus, the Coalition cannot even show that Commerce has the established practice the Coalition claims it does, let alone that Commerce failed to explain a departure from that purported practice.

The Coalition also claims that including December 2024 in the comparison period distorts Commerce's critical circumstances analysis. This argument is also without merit. As a threshold matter, the Coalition's argument relies heavily on its claim that Commerce has a practice of determining whether to include the month in which the petition was filed in the base or comparison period depending on whether the petition was filed in the first or second half of the month. Assuming *arguendo* that Commerce had such a practice, which relates only to the beginning of the comparison period, this does not mean that Commerce also has a practice of selecting the end of the comparison period based on when in the month the preliminary determination in a companion investigation is issued. The Coalition essentially argues that Commerce's practice on when the period begins *ipso facto* applies to when the period ends. But these two analyses are separate and involve distinct considerations by the agency. Nor does such

a practice regarding the beginning of the comparison period (even assuming it exists) mandate that Commerce establish a similar practice for the end of the comparison period. As the Government aptly summed it up, "the two involve separate considerations and do not rise and fall together." Government Br. at 13. It speaks volumes that the Coalition did not, and indeed cannot, point to any statutory or regulatory provision requiring Commerce to establish the same practice for selecting the beginning and the end of the comparison period.

Where neither the Act nor Commerce's regulations mandate the considerations or methodology Commerce is to apply in making a determination, Commerce has discretion to rely on a reasonable practice establishing its considerations in reaching that determination. *See, e.g.*, *Jiaxing Bro. Fastener Co. v. United States*, 822 F.3d 1289, 1293 (Fed. Cir. 2016) ("Commerce has discretion to determine what constitutes the best available information, as this term is not defined by statute."); *Jinko Solar Co. v. United States*, 229 F. Supp. 3d 1333, 1359 (Ct. Int'l Trade 2017) ("Commerce has discretion to establish a reasonable practice to calculate a cash deposit rate in investigations where there is no clear statutory directive.").

Here, as discussed above, Commerce properly exercised that discretion in establishing a practice of basing the final critical circumstances analysis on all available data up through the month of the relevant AD or CVD preliminary determination, even if it is published in the first half of the month. As the Government noted, this practice allows Commerce to "capture a broader picture of respondents' importing activities," Government Br. at 13, and reflects the agency's preference to use all available data in making critical circumstances determinations. *See* IDM at 5, P.R. 692.

Commerce's determination to set the comparison period as it did in this case was also reasonably discernible, based on the arguments that were raised before the agency and

Commerce's analysis of these arguments in the *Final Determination*. Commerce initially used five-month base and comparison periods for its preliminary critical circumstances determination. *See* PDM at 35, P.R. 575. However, in their case briefs, Kangdi and Xiamen Dalle argued that Commerce should use a six-month period. *See* Kangdi Case Br. at 4-5, P.R. 659, C.R. 663; Xiamen Dalle Case Br. at 19, P.R. 660, C.R. 664. In the *Final Determination*, Commerce elected to use six-month periods, relying in part on Kangdi's arguments and in part on its stated practice of relying on all available data. *See* IDM at 13, P.R. 692 (explicitly citing Kangdi's argument before the agency).

Commerce's determination to set the base and comparison periods clearly involves the balancing of different factors, including the available data on the record, and takes into account the parties' arguments on the issue. The Coalition cannot point to any statutory or regulatory language mandating that Commerce give greater weight—let alone controlling weight—to its alleged data "distortion" concern. Nor has it raised any argument as to why Commerce's preference for using all available data when deciding the end of the comparison period is impermissible under either the Act or Commerce's regulations. Thus, its argument amounts to nothing more than a disagreement with Commerce as to how Commerce should weigh different factors and establish its practice regarding the selection of the end of the comparison period, which falls squarely within the agency's broad discretion and hence must fail. *See Apex Frozen Foods Priv. Ltd. v. United States*, 862 F.3d 1337, 1347 (Fed. Cir. 2017) ("A court is not to substitute its judgment for that of the agency, and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (citation modified); *Tianjin Magnesium Int'l Co. v. United States*, 823 F. Supp. 3d 1350, 1363 (Ct. Int'l Trade 2026), *reconsideration denied*, No. 25-00002, 2026 WL 2364552 (Ct. Int'l Trade Aug. 14, 2026) (after

noting that Commerce's "selection of Turkish energy data is in accordance with {the agency's} stated 'preference for data from a single surrogate country,'" the court declined to "second-guess Commerce's decision in selecting among potential surrogate values for natural gas.").

Finally, the Coalition's sole factual basis for its data distortion claim is that Xiamen Dalle's sales [ ] in December 2024. However, as the Government correctly pointed out, there exist other potential variables that could explain why there was a [ ] for December 2024, and [ ], without more, are not sufficient to establish that the December 2024 data are distortive. *See* Government Br. at 15. For example, the record shows that [ ] 2024, two months in the base (or, pre-petition) period, were the [ ] months for Xiamen Dalle's subject merchandise shipments in 2024, after which Xiamen Dalle's subject shipments [ ] throughout the comparison (or, post-petition) period. Xiamen Dalle Q&V Response (Jan. 15, 2025), P.R. 555, C.R. 597. Also, the Coalition failed to mention the fact that Xiamen Dalle shipped [ ] units of subject merchandise in December 2023 and [ ] units in February 2024, indicating that business variables wholly unrelated to the AD investigation could explain Xiamen Dalle's subject merchandise shipment of [ ] units in December 2024. *See id.*, P.R. 555, C.R. 597.

The Coalition's claim that the [ ] in Xiamen Dalle's import shipments must be related to the publication of the *Preliminary Determination*, Coalition Br. at 16-17, is factually incorrect and only invites this Court to reweigh facts on the record and take Commerce's place as the trier of fact, which the Court may not do. *See, e.g.*, *Negev Phosphates, Ltd. v. United States*, 699 F. Supp. 938, 953 (Ct. Int'l Trade 1988) ("This Court lacks authority to interfere with {the agency's} discretion as trier of fact to interpret reasonably evidence collected in {an} investigation."). Indeed, Commerce's ability to weigh record evidence and make factual

determinations is perhaps the area of Commerce's greatest level of discretion as the fact finder in the underlying agency investigation. *See Usinor Sacilor*, 893 F. Supp. at 1123 (Commerce's "decision to place greater or less weight on the evidence presented to it is clearly within its discretion as the fact finder and does not undermine the reasonableness of its determination.") (citing *Negev Phosphates,* 699 F. Supp. at 953 ("This Court lacks authority to interfere with {the agency's} discretion as trier of fact to interpret reasonably evidence collected in {an} investigation.") (citations omitted in original)).

Consistent with these principles, courts have made clear that substantial evidence allows for the possibility of drawing two inconsistent conclusions from evidence on the record. *See Consolo*, 383 U.S. at 620; *SeAH Steel VINA Corp. v. United States*, 950 F.3d 833, 842-43 (Fed. Cir. 2020). Therefore, whether the Coalition's explanation may also be "plausible" is of no relevance here. Courts uphold an agency's decision so long as it is plausibly based on the evidence in the record, which is clearly the case here. *Ad Hoc Shrimp*, 828 F. Supp. 2d at 1353 ("{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.") (quoting *Consolo*, 383 U.S. at 620). The Coalition's claim also presumes that Commerce <u>did not already consider this</u>. But Commerce "need not address every piece of evidence presented by the parties" for the Court to conclude that Commerce adequately addressed all record evidence. *Tianjin Magnesium Int'l*, 823 F. Supp. 3d at 1365 ("absent a showing to the contrary, the court presumes that {Commerce} has considered all of the record evidence.") (quoting *Siemens Energy, Inc. v. United States*, 992 F. Supp. 2d 1315, 1324 (Ct. Int'l Trade 2014), *aff'd*, 806 F.3d 1367 (Fed. Cir. 2015)).

Accordingly, the Court should find that Commerce's determination that critical

circumstances did not exist with respect to Xiamen Dalle was supported by substantial evidence on the record, consistent with its past practice in critical circumstances determinations, and made within the discretion afforded to the agency by law.

### B. The Coalition Has Failed to Exhaust Its Administrative Remedies and Otherwise Waived the Argument that Commerce Improperly Relied on Xiamen Dalle's Q&V Data

The Government rightly assessed that the Coalition failed to exhaust its administrative remedies with respect to its argument that Commerce improperly relied upon Xiamen Dalle's Q&V data in conducting its critical circumstances analysis, and Xiamen Dalle hereby incorporates by reference the Government's arguments on exhaustion. *See* Government Br. at 16-18. Litigants before this Court are required by statute to have exhausted the administrative remedies available to them in the underlying proceeding before Commerce. *See* 28 U.S.C. § 2637(d). The exhaustion requirement demands that parties raise any issues at the appropriate time according to an agency's procedures. *See Hartford Fire Ins. Co. v. United States*, 507 F. Supp. 2d 1331, 1336 (Ct. Int'l Trade 2007); *see also Committee Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States*, Ct. No. 19-00122, Slip Op. 26-77 at 5-6 (Ct. Int'l Trade July 21, 2026) (summarizing cases). Moreover, arguments that a party could have made, but failed to develop in briefing below, may be "deemed abandoned" (*i.e.,* waived). *Committee*, Slip Op. 26-77 at 6 (summarizing cases).

The Coalition never filed comments on Commerce's critical circumstances Q&V questionnaire, which was issued to respondents early on in the underlying agency proceeding. Nor did the Coalition comment on the respondents' responses to that questionnaire, though Commerce's regulations allow it to have done so. *See* 19 C.F.R. § 351.301(c)(v). Thus, the Coalition knowingly relinquished its argument that Commerce

should not have relied on the Q&V data it collected. *See Committee*, Slip Op. 26-77 at 6, n.7 (defining waiver as the "intentional relinquishment or abandonment of a known right") (citation omitted).

Commerce's practice is to base its analysis of whether mandatory respondents' imports have been "massive . . . over a relatively short period" on the monthly Q&V shipment data submitted by the respondents. *See, e.g.*, *Ferrosilicon from Malaysia* IDM at 3; *Epoxy Resins from Korea* PDM at 4, n.36 (unchanged in final). Commerce followed that same practice in this case. Indeed, the Coalition was the party that alleged critical circumstances and reasonably should have anticipated, based on Commerce's consistent practice, that Commerce would rely upon this data in reaching its critical circumstances determination. *See, e.g.*, *U.S. Steel*, 348 F. Supp. 3d at 1254 (finding that a party may "reasonably {} expect adherence to" an agency's established procedure).

A party cannot "sleep on its rights" and expect a court to vindicate them. *See Hartford Fire Ins.*, 507 F. Supp. 2d at 1336. The Coalition had notice of the issue it belatedly seeks to litigate, as the Q&V questionnaire was issued to respondents early in the agency proceeding. *See* Xiamen Dalle Critical Circumstances Q&V Questionnaire, P.R. 297; Guangdong Lvtong Critical Circumstances Q&V Questionnaire, P.R. 312. But parties that have "notice of an issue may not withhold pertinent arguments at the administrative level" so that they can take a fresh "'bite at the apple' before the courts." *Committee*, Slip Op. 26-77 at 6 (citation omitted).

Moreover, the requirement that the Coalition adequately and timely raise all arguments regarding the data to be used in Commerce's "massive" imports determination is particularly important here, as the issue could have affected Commerce's data collection

across several months as well as the final critical circumstances determination. Such an issue should have been raised immediately, not at the eleventh hour before this Court. As in *Committee*, where the court faulted a litigant for failing to raise an issue that would have materially affected Commerce's ultimate subsidy calculation, the issue the Coalition now raises could substantively and significantly affect the outcome as well as the agency's workload. *See Committee,* Slip Op. 26-77 at 16. The Coalition simply is not permitted to raise a brand new argument at this late stage, seeking a new "bite at the apple" before the Court. *Id.*, Slip Op. 26-77 at 6 (citation omitted). The Coalition's argument is also at odds with Commerce's consistent practice, described above, to use the monthly Q&V shipment data submitted by the mandatory respondents in determining whether imports have been "massive . . . over a relatively short period." *See, e.g.*, *Ferrosilicon from Malaysia* IDM at 3; *Epoxy Resins from Korea* PDM at 4, n.36 (unchanged in final). Thus, the Coalition's belated argument essentially requests that Commerce depart from its well-established practice in critical circumstances determinations. An issue of such magnitude, which (1) seeks a fundamental change to the agency's data collection methodology, (2) requests the agency to depart from its established practice, and (3) could significantly influence the outcome, makes it all the more apparent that the Coalition should have raised this argument sooner—before the agency—as it was required to do by law. Accordingly, the Court should find that the Coalition waived this argument by not raising it before the agency.

Should the Court nevertheless consider the Coalition's argument, which we submit it should not, it should reject the argument on the merits. As the Government rightly points out, neither the Act nor the regulations governing Commerce's critical circumstances determinations prescribe the type of data Commerce must consider in evaluating whether

imports have been "massive . . . over a relatively short period." *See* 19 U.S.C. § 1673d(a)(3); 19 C.F.R. § 351.206(h)(1)(i)-(iii). Therefore, Commerce is well within its discretion to determine what data it considers to be the most accurate in determining the quantity and value of a respondent's imports, as it cannot be disputed that the monthly shipments reported by Xiamen Dalle were imports of subject merchandise into the United States from the respondent. *See, e.g.*, *Jiaxing Bro. Fastener*, 822 F.3d at 1293 ("Commerce has discretion to determine what constitutes the best available information, as this term is not defined by statute.").

For all these reasons, the Court should reject the Coalition's so-called "non-import" data argument regarding Commerce's critical circumstances determination with respect to Xiamen Dalle.

## VI. CONCLUSION

For the foregoing reasons, and the reasons set forth in relevant portions of the United States' response brief, Xiamen Dalle respectfully requests that the Court deny Consolidated Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record as it relates to Xiamen Dalle and sustain Commerce's negative critical circumstances determination with respect to the company in the *Final Determination*.

Respectfully submitted,

*/s/Jing Zhang*
Jing Zhang
Ryan R. Migeed
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3385
*Counsel to Xiamen Dalle New Energy Automobile Co., Ltd.*

**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES 2(B)(1)**

The undersigned hereby certifies that this brief contains 7,317 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, glossary of case-specific acronyms and abbreviations, and certificates of counsel, and therefore complies with the maximum 10,000 word count limitation as set forth in the Standard Chambers Procedures of the U.S. Court of International Trade and ECF No. 29.

/s/Jing Zhang
Jing Zhang
Ryan R. Migeed
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3385
*Counsel to Xiamen Dalle New Energy Automobile Co., Ltd.*

Dated: October 26, 2026

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| KANGDI ELECTRIC VEHICLE (HAINAN) CO., LTD. *et al.*,<br><br>Plaintiffs,<br><br>and<br><br>THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,<br><br>Consolidated Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant.<br><br>and<br><br>THE AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,<br><br>Defendant-Intervenor,<br><br>and<br><br>XIAMEN DALLE NEW ENERGY AUTOMOBILE CO., LTD.,<br><br>Defendant-Intervenor. | Consol. Court No. 25-00202 |

**ORDER**

Upon consideration of Consolidated Plaintiff the American Personal Transportation Vehicle Manufacturers Coalition's ("Consolidated Plaintiff") motion for judgment upon the

agency record, defendant's and defendant-intervenors' responses thereto, Consolidated Plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

**ORDERED** that Consolidated Plaintiff's motion is DENIED; and it is further

**ORDERED** that the Department of Commerce's negative critical circumstances determination with respect to Xiamen Dalle is sustained; and it is further

**ORDERED** that judgment is entered in favor of the United States.

Dated: ___________________ , 2026
New York, NY

___________________________
The Hon. Jane A. Restani, Judge